■ DAN GRANIRER et al., Appellants-Respondents, v THE BAKERY, INC., et al., Respondents-Appellants. [863 NYS2d 396]—

Order, Supreme Court, New York County (Barbara R. Kapnick, J.), entered September 17, 2007, which, in an action for, inter alia, breach of a proprietary lease and breach of the warranty of habitability, to the extent appealed from, granted plaintiffs' motion for an abatement of their maintenance until the apartment is restored to a habitable condition and denied their motion to direct defendants to pay their alternate housing expenses, and granted defendants' cross motion to the extent of dismissing the complaint as against the individual defendants, modified, on the law, the cause of action for breach of fiduciary duty dismissed as against the corporate defendant, and otherwise affirmed, without costs.

While triable factual issues exist as to the cooperative defendant's failure to make the required repairs and whether plaintiff denied it access to the apartment, the evidence that the apartment cannot be safely inhabited in its present condition supports a 100% abatement of plaintiffs' maintenance, as authorized by their proprietary lease. We reject defendants' contention that plaintiffs' abatement should not include their contribution to the cooperative's tax and mortgage obligations.

Also, as a matter of simple contract interpretation, the abatement should include these incidents of plaintiffs' ownership of shares in the cooperative. Paragraph 4 (b) of the proprietary lease appurtenant to plaintiffs' apartment provides for an abatement of "rent." Under paragraph 1 (a) "rent" or "maintenance" is a fixed proportion of the lessor's "cash requirements." Paragraph 1 (c) defines "cash requirements" as: "the estimated amount in cash which the Directors shall from time to time in their judgment determine to be necessary or proper for (1) the operation, maintenance, care, alteration and improvement of the corporate property during the year or portion of the year for which such determination is made; (2) the creation of such reserve for contingencies as they may deem proper; and (3) the payment of all obligations, liabilities or expenses incurred or to be incurred, after giving consideration to (i) income expected to be received during such period (other than rent from proprietary lessees), and (ii) cash on hand which the Directors in its [sic] discretion may choose to apply." The above definition is broad enough to encompass taxes and mortgage payments. The parties to this detailed and carefully crafted proprietary lease could have excluded these incidents of ownership from the

abatement provision of paragraph 4 (b) had they chosen to do so.

Paragraph 4 (b) of the proprietary lease provides: *"In case the damage resulting from fire or other cause shall be so extensive as to render the apartment partly or wholly untenantable, or if the means of access thereto* shall be destroyed, the rent hereunder shall proportionately abate until the apartment shall again be rendered wholly tenantable or the means of access restored; but if said damage shall be caused by the act or negligence of the Lessee or the agents, employees, guests or members of the family of the Lessee or any occupant of the apartment, such rental shall abate only to the extent of the rental value insurance, if any, collected by Lessor with respect to the apartment" (emphasis added).

In *Suarez v Rivercross Tenants' Corp.* (107 Misc 2d 135 [1981]), the Appellate Term, First Department, opined that: "A proprietary lessee is entitled to the statutory protection [of the warranty of habitability] as well as the noninvesting, ordinary tenant. While there is thus created the anomalous situation that one who is essentially an owner (by virtue of his purchase of shares) is in a sense suing himself, the situation is not vastly different from any stockholder who has occasion to sue the corporation of which he is a pro rata owner by purchase of stock" (at 139).

One commentator, in impliedly stating that tax and mortgage obligations fall within the parameters of maintenance abatements delineated in proprietary leases, observed that: "Maintenance fee abatements by cooperative owners can be far more detrimental than abatements by condominium owners. The cooperative maintenance fee is not only used to maintain the common elements, but also to pay the underlying mortgage on the property and its taxes. Furthermore, if the cooperative corporation goes insolvent, the property is foreclosed upon, and the shareholders' proprietary leases are rendered void. Even with such grave consequences hanging in the balance, however, our legal system demands that the decision to take such potentially drastic action should be left to the aggrieved party" (Christopher S. Brennan, Note, *The Next Step in the Evolution of the Implied Warranty of Habitability: Applying the Warranty to Condominiums*, 67 Fordham L Rev 3041, 3069 [1999] [footnotes omitted]).

In sum, we are aware of no authority, nor is any proffered by defendants, stating that the abatement clearly provided for in the lease does not include plaintiffs' pro rata share of the cooperative's tax and mortgage responsibilities. Further, the court properly declined to compel the cooperative to pay for

plaintiffs' alternate living expenses without regard to insurance reimbursement or maintenance abatement and absent a hearing thereon (*cf. Ogust v 451 Broome St. Corp.*, 285 AD2d 412, 414 [2001]).

Plaintiffs properly pleaded a cause of action for breach of the covenant of quiet enjoyment by alleging a constructive eviction, i.e., that the conditions in their home, attributable to the cooperative's failure to make the necessary repairs, compelled them to move out (*see Barash v Pennsylvania Term. Real Estate Corp.*, 26 NY2d 77, 83 [1970]).

Contrary to plaintiffs' contention, the complaint does not allege any individual wrongdoing by the individual defendants, who are members of the cooperative's board of directors, separate and apart from their collective actions taken on behalf of the cooperative (*see Pelton v 77 Park Ave. Condominium*, 38 AD3d 1, 10 [2006]).

The cause of action for breach of fiduciary duty should have been dismissed as against the cooperative, as well as the individual defendants, because it is merely duplicative of the cause of action for breach of the proprietary lease (*see Andejo Corp. v South St. Seaport Ltd. Partnership*, 40 AD3d 407, 408 [2007]). Concur—Saxe, J.P., Nardelli and DeGrasse, JJ.

Catterson and McGuire, JJ., concur in part and dissent in part in a separate memorandum by McGuire, J., as follows: I disagree with the majority in one respect, namely, its conclusion that plaintiffs' abatement should include their contribution to the cooperative's tax and mortgage obligations. Paragraph 4 (b) of the proprietary lease does not purport to address this specific issue. Rather, it provides for a "proportiona[l] abate[ment]" of rent if, among other things, damage to the apartment is so extensive as to render it "partly or wholly untenantable." To be sure, it is possible to read paragraph 4 (b) to provide for a 100% abatement when the apartment has been rendered wholly untenantable. But that reading certainly is not compelled by the language of paragraph 4 (b).

In my view, the more sensible reading of the lease and paragraph 4 (b) is that plaintiffs should not be relieved of their obligation to pay that portion of the maintenance that reflects taxes, mortgage costs and other incidents of ownership. If plaintiffs ultimately prevail in this action and are awarded damages for all costs they incurred in securing alternative housing and the apartment is restored to its prior condition, plaintiffs of course will continue to own the shares relating to the apartment. Thus, to relieve plaintiffs of any obligation to pay taxes, mortgage costs and other incidents of ownership would confer a

windfall on them and inflict an unjustified penalty on all other shareholders, including shareholders who are utterly innocent of any wrongdoing relating to the "untenantable" condition of plaintiffs' apartment. Under the majority's interpretation of paragraph 4 (b), all shareholders would pay not only their own share of their incidents of ownership but would subsidize on a pro rata basis plaintiffs' share.

I believe the majority's interpretation of paragraph 4 (b) is at odds with the principle of construction requiring a court to give the "construction most equitable to both parties instead of the construction which will give one of them an unfair and unreasonable advantage over the other" (*Metropolitan Life Ins. Co. v Noble Lowndes Intl.*, 84 NY2d 430, 438 [1994] [internal quotation marks omitted]). [*See* 2007 NY Slip Op 32868(U).]