■ TAMARA STALKER et al., Respondents-Appellants, v STEWART TENANTS CORPORATION, Appellant-Respondent, et al., Defendants. [940 NYS2d 600]—

Order, Supreme Court, New York County (Judith J. Gische, J.), entered November 30, 2010, which, insofar as appealed from as limited by the briefs, granted defendants' motion to dismiss the second cause of action and all claims against defendant board members in their individual capacities, and denied the motion to dismiss the first and third causes of action and the claims for punitive damages thereon, unanimously modified, on

the law, to deny the motion as to the second cause of action, and to grant the motion as to the third cause of action as against defendant Stewart Tenants Corporation, and otherwise affirmed, without costs.

Plaintiff Stalker is married to plaintiff Maia, who is of Brazilian origin. Plaintiffs allege that, in September 2008, they entered into a contract to sell their cooperative unit to Herman and Barbara Lederberg, senior citizens residing primarily in Florida. Plaintiffs claim that defendants denied the Lederbergs' application for approval of the contract on the stated ground that the Lederbergs did not meet a requirement in the bylaws that purchasers use their units as their primary residences. Plaintiffs further contend that the bylaws have never contained any primary residence requirement and that defendants' ground for rejecting the application was a pretext for discriminating against the Lederbergs on account of their age and against Maia on account of his national origin.

The complaint states a cause of action for housing discrimination under New York State's Human Rights Law (Executive Law § 296 [5]), which makes it an unlawful discriminatory practice to refuse to sell a housing accommodation to any person on the basis of, inter alia, national origin or age (*see* § 296 [5] [a] [1]). Defendants argue that plaintiffs lack standing to assert the claim, because they are the sellers, not the purchasers, and they are not members of the class allegedly being discriminated against (the elderly). However, in contrast to Executive Law § 296 (5) (a) (1), section 296 (5) (a) (2) makes it an unlawful discriminatory practice to "discriminate against *any person*" (emphasis added) on the basis of, inter alia, national origin or age in the sale of a housing accommodation. We find that this more expansive language provides a remedy for any person "adversely affected by reason of discrimination" in the provision of housing in New York (*Axelrod v 400 Owners Corp.*, 189 Misc 2d 461, 465, 466 [2001], citing *Bernstein v 1995 Assoc.*, 185 AD2d 160, 163 [1992] [alleged refusal to grant the plaintiffs a lease because of the medical services they provided "state(s) a valid cause of action (for discrimination against women, ethnic minorities and the disabled) despite the fact that (the plaintiff doctor) was not the actual victim of discrimination"]). This construction is appropriate in light of the remedial purpose of the Human Rights Law, which embodies "the strong antidiscrimination policy of this State" (*National Org. for Women v State Div. of Human Rights*, 34 NY2d 416, 419 n 2 [1974]).

Given the substantial identity between the language and purposes of Executive Law § 296 (5) and those of the federal

Fair Housing Act (42 USC § 3601 *et seq.*; *see Sayeh v 66 Madison Ave. Apt. Corp.*, 73 AD3d 459, 461 [2010]; *Mitchell v Shane*, 350 F3d 39, 47 n 4 [2d Cir 2003]), plaintiffs have also stated a claim for housing discrimination under the Fair Housing Act (*see Morton v 303 W. 122nd St. H.D.F.C.*, 2011 NY Slip Op 31888[U], *12 and n 3 [2011]). Indeed, the Fair Housing Act defines an "[a]ggrieved person" as "any person who . . . (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur" (42 USC § 3602 [i]; *see* § 3613 [a]).

It is black letter law that "a corporation does not owe fiduciary duties to its members or shareholders" (*Hyman v New York Stock Exch., Inc.*, 46 AD3d 335, 337 [2007]). Thus, plaintiffs' third cause of action alleging breach of fiduciary duty should be dismissed as against defendant corporation (*see Peacock v Herald Sq. Loft Corp.*, 67 AD3d 442, 443 [2009]). Plaintiffs' allegations that not every board member convened to review the application of the prospective purchases, and that the board improperly rejected the application, do not allege that the directors acted outside their official capacities, and are insufficient to state claims against the directors in their individual capacities (*see Peacock*, 67 AD3d at 442). Although allegations of unequal treatment of shareholders may be sufficient to overcome the protection afforded directors under the business judgment rule, individual directors may not be subject to liability absent allegations that they committed separate tortious acts (*see Konrad v 136 E. 64th St. Corp.*, 246 AD2d 324, 326 [1998]).

We reject defendants' argument that plaintiffs have not alleged sufficiently reprehensible behavior on defendants' part to support an award of punitive damages (*see U.S. Trust Corp. v Newbridge Partners*, 278 AD2d 172 [2000]; *Swersky v Dreyer & Traub*, 219 AD2d 321, 328 [1996]). They were not required to allege behavior directed at the public generally (*see Sherry Assoc. v Sherry-Netherland, Inc.*, 273 AD2d 14, 15 [2000]). We note, however, that any punitive damages award to plaintiffs for violation of Executive Law § 296 is statutorily limited to $10,000 (*see* Executive Law § 297 [4] [c] [iv]; [9]; *Thoreson v Penthouse Intl.*, 80 NY2d 490, 498 [1992]). Concur—Tom, J.P., Catterson, DeGrasse, Richter and Manzanet-Daniels, JJ.