OPINION OF THE COURT
Leonard D. Steinman, J.
This is an action alleging that the rejection of potential purchasers of a cooperative apartment in Woodmere, New York by the co-op’s Board of Directors (the Board) was wrongful. The action is based on a simple premise: the Board unlawfully discriminated against a single male purchaser because of his *845 marital status.[1] Plaintiff asserts that the Board then rejected a female purchaser to cover for their unlawful rejection of the first purchaser.
The evidence supporting the claim is also straightforward: the sale of the apartment to the single male buyer for $200,000 was rejected purportedly because the price was too low. The Board failed to indicate an acceptable price notwithstanding that the buyer was willing to increase his offer. And the Board ultimately approved the sale of the apartment to a third purchaser, the Lynchs (presumably a married couple), for $160,000; i.e., $40,000 less than the supposed insufficient offer. There is no evidence that the Board actually met and conferred with respect to the rejected sale.
Defendants now seek summary judgment dismissing the complaint. In the alternative, defendants seek an order vacating the note of issue, removing the case from the trial calendar and striking plaintiff’s pleadings as a result of plaintiff’s failure to fully respond to defendants’ September 30, 2014 interrogatories. Defendants further seek an order striking plaintiff’s demand for a jury trial. Plaintiff opposes the application in its entirety.[2]
Background
In 2000, Sylvia Berkowitz (now deceased) and her husband Martin (now deceased), “purchased” unit 4J of defendant 29 Woodmere Blvd. Owners’, Inc., a cooperative corporation. They received 485 shares in the cooperative corporation and a proprietary lease for apartment 4J. Ten years later the Berkowitzes sought to sell the unit.
Plaintiff alleges that they found two prospective buyers but that the buyers were not approved by the co-op’s Board. The first, Jeffrey Lax, a single male, offered $200,000, in April 2010. The June 7, 2010 Board meeting minutes reflect the following with regard to the prospective sale: “(t)he packet regarding the sale of 4J needs to be reviewed by all board members. A decision on whether or not to interview the prospective buyer must be made very soon.” The July 6, 2010 Board meeting minutes reflect that “the prospective buyer feels he was discriminated *846 against.” These are the only Board meeting minutes concerning the sale.
It is undisputed that Lax’s application was not approved by the Board and his request for reconsideration was denied. In deposition testimony, only Board member defendant Lon Samuelson testified that he voted in favor of approving the Lax application. By letter dated July 17, 2010, Mr. Lax was informed by the co-op’s managing agent that “the Board of Directors has reviewed your application to purchase the above referenced apartment [Apartment 4J] and has hereby denied the sale.” By letter dated August 18, 2010, the board’s attorney, David Boyar, advised Lax that the decision not to approve his application and to do so without conducting an interview “was based solely on the negotiated price.”
Lax then commenced an action in federal court (the Lax action) against the Berkowitzes and their son Murray, the cooperative corporation, the managing agent and Steven Mir-sky, an officer of the managing agent. Lax alleged that his application to buy apartment 4J was rejected because he was a single male, and that such rejection constituted illegal discrimination on the basis of his marital status. The Lax action was voluntarily discontinued after his claims were settled by the co-op for an undisclosed sum.
A second prospective buyer—Lisa Manginelli—offered a purchase price of $202,500 in August 2011. On August 25, 2011, the Board declined to approve the sale. The Board minutes reflect as follows: “[T]he board reviewed the paperwork for the prospective buyer of 4J. After review it was decided to deny the prospective buyer.” The Board asserts that Manginelli’s finances were not strong enough. A request for reconsideration of the Manginelli application was later denied.
Apartment 4J was finally sold in September 2013, after the Board approved the third prospective buyers, who offered a purchase price of only $160,000.
In this action plaintiff alleges claims for breaches of fiduciary duty and breaches of contract in connection with the failure of the co-op to approve the Lax and Manginelli contracts. Plaintiff also alleges a cause of action for counsel fees and expenses incurred as a result of the rejection of the Lax and Manginelli contracts.
Sylvia was 97 years old when this application was made but has since passed away. It is undisputed that throughout the ac *847 tion she was in frail health, and for this reason the court directed that she should respond to defendants’ questions via interrogatories rather than appear for a deposition (order dated July 30, 2014). Before she died, Sylvia admitted that she had no involvement in the negotiations or procedure concerning the sale of her apartment and had no contact regarding same with the Board, the brokers or the prospective purchasers. Rather, she relied upon her son Murray Berkowitz, the current plaintiff as administrator of her estate, to act as her agent. (Aff of Sylvia Berkowitz, dated Mar. 5, 2013.)
The defendants deny the allegations of the complaint. Defendants alleged a counterclaim for counsel fees in its answer, but that counterclaim was dismissed by order of the Honorable Denise Sher, dated August 8, 2013.
Legal Analysis
On a motion for summary judgment, the proponent must tender sufficient evidence to demonstrate the absence of any material issues of fact to make out a prima facie showing that it is entitled to judgment as a matter of law. (Giuffrida v Citibank Corp., 100 NY2d 72, 81 [2003].) Upon such a showing, the burden then shifts to the party opposing the motion to produce evidence, in admissible form, to demonstrate the existence of an issue of material fact which requires a trial of the action. (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986].) Where the movant fails to meet its initial burden the motion for summary judgment should be denied. (US Bank N.A. v Weinman, 123 AD3d 1108 [2d Dept 2014].) As a general rule, a party does not carry its burden in moving for summary judgment by pointing to gaps in its opponent’s proof, but must affirmatively demonstrate the merit of its claim or defense. (See Mennerich v Esposito, 4 AD3d 399, 400 [2d Dept 2004].)
I. Breach of Fiduciary Duty (First and Fourth Causes of Action)
Plaintiff asserts two separate causes of action against all defendants for breach of fiduciary duty in failing to approve the Lax and Manginelli contracts, respectively. In support of their application for summary judgment, defendants assert that each Board member considered both applications and decided, based solely upon the applications, to reject the contracts without the need for an interview. Defendants assert that the rejections were based upon the low sale price offered by Lax and Manginelli’s poor financial circumstances.
*848 To the extent that plaintiff’s first and fourth causes of action allege that the corporation is liable for breaches of fiduciary-duty such claims are dismissed. A corporation does not owe a fiduciary duty to its individual unit owners and shareholders. (Stalker v Stewart Tenants Corp., 93 AD3d 550 [1st Dept 2012]; Tucciarone v Hamlet on Olde Oyster Bay Homeowners Assn., Inc., 41 Misc 3d 1236[A], 2013 NY Slip Op 51992[U] [Sup Ct, Nassau County 2013].)
Defendants’ argument that the claims for breaches of fiduciary duty are duplicative of the breach of contract claims is not persuasive since the contract claims are only asserted against the corporation. The fiduciary duty claims have now been dismissed as against the corporation and, therefore, the claims are not duplicative.
As a general rule, the managing agent of a cooperative corporation owes a fiduciary duty to the cooperative corporation but not to the individual shareholders. (Caprer v Nussbaum, 36 AD3d 176, 191 [2d Dept 2006].) An exception may arise where a managing agent has aided and abetted a breach of fiduciary duty. (Id.) There being no allegations with any specificity of such activities the first and fourth causes of action as against defendants Alexander Wolf & Company and Steven Mirsky (an officer of Alexander Wolf & Company) must also be dismissed.
In their role as members of a board, the directors owe a fiduciary duty to the corporation’s shareholders “to act solely in the best interests of the shareholders.” (Bryan v West 81 St. Owners Corp., 186 AD2d 514, 515 [1st Dept 1992]; see also Murphy v State of New York, 14 AD3d 127 [2d Dept 2004]; Board of Mgrs. of Fairways at N. Hills Condominium v Fairway at N. Hills, 193 AD2d 322 [2d Dept 1993].) Individual members of a co-op’s board of directors may be held personally liable for breach of fiduciary duty if their decision-making is tainted by discriminatory considerations. (See e.g. Cohen v Kings Point Tenant Corp., 126 AD3d 843 [2d Dept 2015]; Fletcher v Dakota, Inc., 99 AD3d 43 [1st Dept 2012].) As our courts have recognized, discrimination rarely announces itself, so that generally a plaintiff alleging discrimination must ask the factfinder to infer the defendant’s intent from circumstantial evidence. (See Bennett v Health Mgt. Sys., Inc., 92 AD3d 29 [1st Dept 2011].)
Plaintiff alleges that the Board was motivated by an unlawful desire to prevent an unmarried male from moving into the co-op building. Although a majority of the Board attempted *849 to justify its refusal to approve Lax’s application on the grounds that the selling price was too low, they ultimately approved a purchaser for a selling price that was 20% lower. Plaintiff has submitted evidence reflecting that the Board never met to discuss and consider the Lax application and the sale amount. After he was rejected, Lax expressed a willingness to increase his offer. Ira S. Ezratty, Esq., counsel to the Berkowitzes for all of the potential sales, then proposed various prices above $200,000 to the Board through its managing agent. He received no response from the Board concerning an increased sale price nor would the Board indicate what price would be acceptable.
Defendants have failed to proffer any explanation for their subsequent approval of the lower offer. They also have failed to identify documents, statistics or any facts upon which they relied when they purportedly concluded that the Lax offer was insufficient. Instead, defendants argue that they have explained their rationale and that should be enough. It is—to create an issue of fact. The individual defendants are not entitled to dismissal of the first cause of action, pertaining to the Lax contract, in light of all of the material facts in dispute. Defendant Samuelson, however, voted to approve the Lax contract, and therefore cannot be held liable for its rejection (and thus the first cause of action must be dismissed as against him).
Because the Board members’ decisions may or may not have been tainted by discriminatory motives, and the existence of such a motive is sufficient to hold the Board members liable, their argument that they are not alleged to have acted tortiously other than within the scope of their authority as board members is rendered academic. In all events, no such independent wrongdoing must actually be shown.
To support their argument that plaintiff must demonstrate independent tortious conduct other than in their capacity as board members the Board relies upon two cases: a First Department case, Granirer v Bakery, Inc. (54 AD3d 269 [1st Dept 2008]), that has been effectively overruled, and a Court of Appeals decision, Murtha v Yonkers Child Care Assn. (45 NY2d 913 [1978]), that has been misconstrued by courts in both the First Department (as it has conceded) and the Second Department. As the First Department explained in Fletcher,
“there is no principle of corporate law that director liability arises only where the director commits a tort independent of the tort committed by the corporation itself. . .
*850 “[A] director may be held individually liable to third parties for a corporate tort if he either participated in the tort or else directed, controlled, approved, or ratified the decision that led to the plaintiff’s injury.” (Fletcher v Dakota, Inc., 99 AD3d at 49 [internal quotation marks and citation omitted].)
The Court in Fletcher acknowledged that the First Department went astray when it relied on Murtha to hold in cases such as Pelton v 77 Park Ave. Condominium (38 AD3d 1 [1st Dept 2006]) and Granirer that wrongdoing by board members separate and apart from their collective actions taken on behalf of a cooperative corporation must be demonstrated. In Murtha, the Court of Appeals affirmed the dismissal of allegations against individual directors of the defendant association that they conspired to induce a breach of contract between the plaintiff and the association. The Court relied upon the legal theory that a director or officer of a corporation is not personally liable to someone who contracted with the corporation merely because he or she made good faith decisions or took steps that resulted in the corporation’s breach of the contract. (Murtha at 915.) Instead, it must be shown that independent torts were committed. (Id.) The Court of Appeals never extended this concept to effectively immunize individual corporate directors from breach of fiduciary duty claims stemming from corporate actions not defensible under the business judgment rule. (See Fletcher at 49 [there is no “safe harbor from judicial inquiry for directors who are alleged to have engaged in conduct not protected by the business judgment rule”].)
Nonetheless, there are still Second Department cases, including cases as recent as Cohen (126 AD3d at 845), that repeat without analysis or elucidation the notion that independent tortious conduct by board members must be shown. An examination of these cases reveals that the legal support cited for the proposition is dependent (directly or indirectly) upon the now-overruled First Department decision in Pelton[3] Upon examination, the Second Department is likely to follow the *851 First Department’s lead in Fletcher and reject reliance upon Felton and its progeny. The lodestar will then properly be the Court of Appeals’ instruction in Matter of Levandusky v One Fifth Ave. Apt. Corp. (75 NY2d 530 [1990]), that the conduct of a residential cooperative corporation’s board of directors is best measured by application of a single standard: the principles of the business judgment rule. (Id. at 540.)
Utilizing those principles, the fourth cause of action, pertaining to the Manginelli contract, must be dismissed as against all of the Board members. Under the business judgment rule, actions taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes may not be questioned. (Id. at 538.) Therefore, in determining whether the Board unreasonably withheld approval of a sale “it is the business judgment rule, not the court’s independent assessment of the reasonableness of the decision, that provides the proper standard of review.” (Del Puerto v Port Royal Owner’s Corp., 14 Misc 3d 1214[A], 2007 NY Slip Op 50029 [U], *8 [Sup Ct, Kings County 2007], affd 54 AD3d 977 [2d Dept 2008].)
The Board members each explained that they did not believe that Manginelli’s income was sufficient in light of her expenses, including the maintenance to be paid for the apartment. Given the undisputed facts—her salary was $2,785 per month and maintenance alone on the apartment was approximately $1,338, or nearly half of her monthly income—and the absence of any evidence that the Board did not act in good faith, there is no basis for plaintiff’s claim that the Board members breached their fiduciary obligations when they failed to approve the Manginelli contract.
II. Breach of Contract Claim (Second and Third Causes of Action)
In the second and third causes of action plaintiff alleges that defendant, 29 Woodmere Blvd. Owners’, Inc., breached the *852 proprietary lease’s implied covenant of good faith and fair dealing when it failed to approve the Lax and Manginelli contracts. The proprietary lease permits the Board to grant or withhold its consent to an assignment “for any reason or no reason,” but prohibits the Board from “unreasonably” withholding its consent (proprietary lease, exhibit B, ¶ 16 [c]).
A covenant of good faith and fair dealing is “implicit in every contract . . . which encompasses any promise that a reasonable promisee would understand to be included” (Prakhin v Fulton Towers Realty Corp., 122 AD3d 601, 602 [2d Dept 2014] [brackets omitted]). “The implied covenant of good faith and fair dealing is breached when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement.” (Id., citing Atlas El. Corp. v United El. Group, Inc., 77 AD3d 859 [2d Dept 2010].)
Here, plaintiff need not rely on an implied covenant of good faith and fair dealing—the proprietary lease expressly forbids the co-op from rejecting a prospective purchaser unreasonably. For the reasons discussed above, the court finds that plaintiff has raised triable issues of fact as to whether the corporation breached the proprietary lease with respect to the Lax contract. Plaintiff failed to make a sufficient showing to raise such an issue concerning the Manginelli contract, notwithstanding the inapplicability of the business judgment rule due to the contractual reasonableness requirement. (See Silver v Murray House Owners Corp., 126 AD3d 655 [1st Dept 2015].) Based on the foregoing, defendants’ motion for summary judgment dismissing the third cause of action is granted; it is denied as to the second cause of action.
III. Claim for Expenses (Fifth Cause of Action) and Request for Counsel Fees
In the fifth cause of action plaintiff seeks recovery of attorneys’ fees incurred in having to defend the Lax action as well as expenses, including maintenance and utility costs, incurred as a result of the denial of the Lax and Manginelli applications. This claim does not set forth an independent cognizable cause of action—it merely seeks consequential damages to which plaintiff may be entitled with respect to his two surviving claims. (See Trans-State Hay & Feed Corp. v Faberge, Inc., 42 AD2d 535 [1st Dept 1973].) As a result, this cause of action is dismissed.
*853 Plaintiff also seeks counsel fees incurred in this action. “Under the general rule, attorneys’ fees and disbursements are incidents of litigation and the prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties or by statute or court rule.” (Mount Vernon City School Dist. v Nova Cas. Co., 19 NY3d 28, 39 [2012], quoting Matter of A.G. Ship Maintenance Corp. v Lezak, 69 NY2d 1, 5 [1986].) Real Property Law § 234 establishes the “reciprocal” right of a tenant to recover counsel fees and expenses when the same benefit is bestowed upon the landlord pursuant to the parties’ lease. (See also Matter of Cohan v Board of Directors of 700 Shore Rd. Waters Edge, Inc., 108 AD3d 697 [2d Dept 2013].)
Paragraph 28 of the proprietary lease provides that the co-op may recover from the tenant reasonable counsel fees and disbursements incurred as a result of a tenant’s default under the lease. This court previously ruled that defendants have no counterclaim for counsel fees pursuant to this paragraph because this action does not involve a default by the plaintiff (Sher, J., order dated Aug. 8, 2013). The reverse is not true; plaintiff alleges that the co-op breached the proprietary lease and if he prevails he is entitled to recover reasonable counsel fees and expenses from the co-op pursuant to Real Property Law § 234. The claim is dismissed, however, as against the individual defendants—there is no contractual or statutory basis for plaintiff to recover attorneys’ fees from these defendants.
Defendants further request an order vacating the note of issue and striking this case from the trial calendar. Defendants contend that there remains outstanding discovery and that the so-ordered stipulation executed by the parties at the certification conference dated December 3, 2014 was not adhered to by plaintiff. That stipulation provides, among other things, that “plaintiffs agree to not file the Note of Issue and Certificate of Readiness for 30 days from today in order to afford the parties the ability to file discovery motion practice or appellate practice regarding discovery disputes.” Defendants assert that certain interrogatory responses of plaintiff were insufficient and that plaintiff has not produced all requested documents concerning plaintiff’s alleged damages.
It is undisputed that defendants did not file a motion to compel or preclude between December 3, 2014 (the date the so-ordered stipulation was executed) and February 11, 2015 (the *854 date the note of issue and certificate of readiness was filed). Therefore, the court will not strike the note of issue. To the extent that plaintiff seeks to introduce documents at trial that were not produced during discovery defendants will have an appropriate remedy at that time.
Defendants seek for the court to strike plaintiff’s demand for a jury trial. The proprietary lease (¶ 42) contains a very broad waiver of jury trial clause, which provides that
“the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this lease .... or any claim of damage resulting from any act or omission of the parties in any way connected with this lease or the apartment.”
Jury waivers contained in proprietary leases are generally enforceable. (See Sherry Assoc. v Sherry -Netherlands, Inc., 273 AD2d 14 [1st Dept 2000]; see also Cohn v Adler, 139 AD2d 481 [2d Dept 1988].) Therefore, plaintiff is not entitled to a jury with respect to the breach of contract action. And because plaintiff joined his breach of fiduciary duty claim with a related one for which he has no right to a jury trial, he has waived his right to a jury with respect to both claims. (See Tiffany at Westbury Condominium v Marelli Dev. Corp., 34 AD3d 791 [2d Dept 2006].)
Any relief requested not specifically addressed herein is denied.

. Pursuant to section 296 (5) (a) of the Executive Law (New York State Human Rights Law) it is unlawful to discriminate with respect to the sale of a co-op on the basis of marital status.

. The caption in this action has been amended twice, in 2013 and 2015, to reflect the death of both Martin and Sylvia Berkowitz.

. See e.g. Hill v Murphy (63 AD3d 680, 681 [2d Dept 2009]) and Meadow Lane Equities Corp. v Hill (63 AD3d 699 [2d Dept 2009]). In Meadow Lane, the Court held that no valid claims were stated against the board members even though the allegations of the complaint were sufficient to overcome the business judgment rule. (Id. at 700.) Among the cases relied upon in these Second Department decisions are Brasseur v Speranza (21 AD3d 297 [1st Dept 2005]), Konrad v 136 E. 64th St. Corp. (246 AD2d 324, 325-326 [1st *851 Dept 1998]), and DeCastro v Bhokari (201 AD2d 382, 383 [1st Dept 1994]), all of which were effectively overruled by Fletcher.
The Court in Cohen also relied upon the First Department decision in 20 Pine St. Homeowners Assn. v 20 Pine St. LLC (109 AD3d 733, 735-736 [1st Dept 2013]), wherein claims were dismissed against individual directors because no independent tort was alleged. 20 Pine St. inexplicably was issued after Fletcher. The Court in 20 Pine, without analysis, relied upon the preFletcher decision in Granirer, which, in turn, relied upon the First Department’s decision in Pelton—the very decision overruled by Fletcher. Thus proving, perhaps, that legal shibboleths—especially simple, easily phrased shibboleths—die hard.