## Hecht v 89th St. Owners Corp.

2024 NY Slip Op 33539(U)

October 4, 2024

Supreme Court, New York County

Docket Number: Index No. 151542/2023

Judge: Dakota D. Ramseur

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| PRESENT:    **HON. DAKOTA D. RAMSEUR** | PART      **34M** |
| *Justice* | |

--------------------------------------------------------------------------------X

ADI HECHT,

                       Plaintiff,

               - v -

89TH STREET OWNERS CORP., THE BOARD OF
DIRECTORS OF 89TH STREET OWNERS CORP., ERIC
USINGER, KENT WOLGEMUTH, ELIZABETH
WOLGEMUTH, JIM CARPENTER, PAUL ROSENBERG,
JOHN/JANES DOES #1-9, AS MEMBERS OF THE BOARD
OF DIRECTORS OF 89TH STREET OWNERS CORP.

                       Defendant.

--------------------------------------------------------------------------------X

| |
|---|
| INDEX NO.     151542/2023 |
| MOTION DATE     06/22/2023 |
| MOTION SEQ. NO.     001 |

### DECISION + ORDER ON MOTION

The following e-filed documents, listed by NYSCEF document number (Motion 001) 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51

were read on this motion to/for                DISMISS             .

      In February 2023, plaintiff Adi Hecht commenced this action against defendants 89th Street Corp., The Board of Directors of 89th Street Owners Corp. (hereinafter, "the Board"), and various individual members of the Board. Plaintiff alleges that she was discriminated against and denied housing based on her disability and requested accommodation to allow her to live with her service dog. She asserts causes of action for discrimination under the Fair Housing Act (the "FHA") (42 U.S.C §3601), the New York State Human Rights Law ("NYSHRL") (Executive Law § 296 [5]), and the New York City Human Rights Law ("NYCHRL") (Administrative Code § 8-107 [5] [a]) and another for negligent infliction of emotional distress. In Motion Sequence 001, defendants move pre-answer to dismiss each of plaintiff's claims pursuant to CPLR 3211 (a) (1) and (a) (7). Plaintiff opposes the motion in its entirety. For the following reasons, the motion is granted in part.

## BACKGROUND

      89th Street Owners Corp (the "Co-Op") owns the building located at 11 West 89th Street and operates the premises through the Board, which is composed of members living in said building. At all relevant times, defendants Benjamin Howard and Eric Usinger were, respectively, the President and Vice President of the Board.

      In August 2022, plaintiff agreed to purchase Apartment 3 in the subject building for $1,350,000, from Howard, as the unit's owner. (NYSCEF doc. no. 43, contract of sale.) Per the contract of sale, plaintiff made an initial deposit of $135,000. (*Id.*) After securing a mortgage

[* 1]

commitment for $715,000 from a lender (NYSCEF doc. no. 44, <u>mortgage</u>), she submitted her application to the Board for consideration and approval. When submitting her application, plaintiff knew of the Co-Op's policy that did not permit dogs in the building. (NYSCEF doc. no. 42 at ¶ 11, <u>Hecht affidavit</u>.) Nonetheless, in November 2022, plaintiff wrote a letter to the Co-op explaining that her Type 1 Diabetes affects her blood sugar levels, particularly while she's asleep, and could cause her to slip into a diabetic coma. (NYSCEF doc. no. 47, <u>letter dated 11/30/22</u>.) She further explained that her service dog can perceive quick and drastic changes in her sugar levels faster than a blood sugar meter and is able to alert her to when she needs to stabilize her sugar levels. (*Id*.) As part of her letter, she provided the Co-Op with confirmation of her diagnosis from her physician (*id.*) and submitted her dog's Certificate of Registration from the Americans with Disabilities Act's ("ADA") Service Animal Registry's (NYSCEF doc. no. 48, <u>certificate</u>.)

On December 1, 2022, the Board held an interview with plaintiff that lasted nearly two hours, much of which, she alleges, focused on her support dog, including whether there were medical devices that could obviate her need for one and what she would do when her elderly service dog passed. (NYSCEF doc. no. 42 at ¶ 16-18.) According to plaintiff, the Board rejected her application to purchase the apartment within seven minutes of the interview ending (*id*. at ¶ 21; NYSCEF doc. no. 49, <u>rejection email time-stamped 12/1/22 at 8:53 p.m.</u>) and did not reconsider her application when informed that she would place "one year's maintenance in escrow" to defray risks related to her being able to support maintenance or special assessments that may arise. (*Id*. at ¶ 49.)

Thereafter, in February 2023, plaintiff commenced this action under the FHA, the NYSHRL, and NYCHRL, alleging that the Co-Op and Board denied her housing application because of her disability and request to accommodate her service dog. Here, in moving to dismiss under CPLR 3211 (a) (1) and (a) (7), defendants contend that (1) plaintiff cannot bring this action against the individual defendants or the Board, (2) their decision to deny plaintiff was based on certain financial irregularities with her application—not on her disability—and, as such, the business judgment rule shields their decision from judicial review, and (3) plaintiff fails to plead a cause of action for negligent infliction of emotional distress. In opposition, plaintiff alleges that individual board members may be held liable if discriminatory considerations tainted their decision to deny her housing, that nothing in the business judgment rule shields the Co-Op or the Board from liability where a plaintiff has alleged a discrimination claim, and that her discrimination and negligent infliction claims have been adequately alleged.

## DISCUSSION

*Standard of Review*

On a motion to dismiss under CPLR 3211 (a) (1), courts may grant such relief only where the "documentary evidence" is of such nature and quality—"unambiguous, authentic, and undeniable"—that it utterly refutes plaintiff's factual allegation, thereby conclusively establishing a defense as a matter of law. (*See Phillips v Taco Bell Corp.*, 152 AD3d 806, 806-807 [2d Dept 2017]; *VXI Lux Holdco S.A.R.L v SIC Holdings, LLC*, 171 AD3d 189, 193 [1st Dept 2019 ["A paper will qualify as 'documentary evidence' if…(1) it is 'unambiguous,' (2) it is

[* 2]

of 'undisputed authenticity,' and (3) its contents are 'essentially undeniable'"].) As the First Department explained, the documentary evidence relied upon must "definitely dispose of the plaintiff's claim." (*Art & Fashion Group Corp. v CyclopsProd., Inc.* 120 AD3d 436, 438 [1st Dept 2014].) While documents reflecting out-of-court transactions such as contracts, mortgages, and deeds are considered prototypical examples of "documentary evidence" because their contents clearly meet the three above-described criteria (*see Prott v Lewin & Baglio, LLP*, 150 AD3d 908 [2017]), in certain circumstances, communications between parties in emails and text messages may qualify as documentary evidence. (*Amsterdam Hospitality Group, LLC v Marshall-Alan Assoc., Inc.*, 120 AD3d 431, 432-433 [1st Dept 2014]; *Langer v Dadabhoy*, 44 AD3d 425, 426 [1st Dept 2007]; *Art & Fashion Group Corp. v Cyclops Prod., Inc.*, 120 AD3d 436, 438 [1st Dept 2014].) In each of the above-cited cases, the First Department has stressed that, as with all such evidence, email and text communications may be considered "documentary" only where they meet the "essentially undeniable" test.

On a motion to dismiss for failure to state a cause of action under CPLR 3211 (a) (7), courts afford the pleadings a liberal construction, accept the facts as alleged in the complaint as true, and give the plaintiff the benefit of every possible favorable inference. (*Leon v Martinez*, 84 NY2d 83, 87 [1994]; *JF Capital Advisors, LLC v Lightstone Group, LLC*, 25 NY3d 759, 764 [2015].) Nonetheless, conclusory allegations—claims consisting of bare legal conclusions with no factual specificity—are insufficient to survive a motion to dismiss.' (*See Godfrey v Spano*, 13 NY3d 358, 373 [2009]; *Barnes v Hodge*, 118 AD3d 633, 633-634 [1st Dept 2014].) A court's inquiry is limited to assessing the legal sufficiency of the plaintiff's pleadings; accordingly, its only function is to determine whether, from facts alleged and inferences drawn therefrom, plaintiff has stated the elements of a cognizable cause of action. (*JF Capital Advisors*, 25 NY3d at 764; *Skill Games, LLC v Brody*, 1 AD3d 247, 250 [1st Dept 2003].)

*Plaintiff's Causes of Action Against Individual Board Members*

At the outset, defendants contend that plaintiff is required to plead with specificity independent tortious acts by each board member to support personal liability and overcome the public policy that supports the business judgment rule. (*See Konrad v 136 E. 64th St. Corp.*, 246 AD2d 324, 326 [1st Dept 1998] [explaining that in *DeCastro v Bhokari* (201 AD2d, 382, 383 [1st Dept 1994]), the court found that individual directors and officers of a Co-Op may not be subject to liability absent allegations they committed separate tortious acts]; *Pelton v 77 Park Ave. Condominium*, 38 AD3d 1, 10 [1st Dept 2006] [finding that, in bringing an action against individual members of a cooperative or condominium board based on allegations of discrimination, "plaintiffs were required to plead with specificity independent tortious acts by each individual member"].) Defendants further argue that plaintiff has failed to plead said independent tortious actions as her complaint does not reference any of the named individuals except one. As such, they contend, her causes of action against each individual member are premised on their membership and conduct in the Board.

The problem with this line of argument is that the First Department in *Fletcher v Dakota, Inc.* (99 AD3d 43, 49-50 [1st Dept 2012]) overruled *Pelton* and, by extension, *Konrad*. There, in addressing "individual board member liability in the context of discriminatory acts," the First Department explained that "there is no principle of corporate law that director liability arises

only where the director commits a tort independent of the tort committed by the corporation itself." On the contrary, the court noted, "it has long been held that a corporate officer who participates in the commission of a tort may be held individually liable." (*Id.* at 49.) The *Fletcher* court then took the opportunity to point out where *Pelton* went wrong. In its view, (1) the *Pelton* court took a rule applicable only to a Co-Op's alleged breach of contract and employed it where a Co-Op was accused of engaging in an intentional tort, i.e., discrimination, and (2) the rule was not one consistent with the Court of Appeals' decision in *Matter of Levandusky v One Fifth Ave. Apt. Corp.* (75 NY2d 530, 553 [1990]), which carved out areas, like discrimination, where the business judgment rule does not protect board member conduct. (*Fletcher*, 99 AD3d at 50.) The First Department, therefore, declined to follow the pleading rule articulated in *Pelton*. (*Id.*, citing *Levandusky*, 75 AD2d at 536].) Instead, it found that Fletcher, an African American, had adequately pled a discrimination cause of action against two directors of a Co-Op who had allegedly considered his race in refusing to approve his purchase of an apartment in their building. (*Id.* at 50-51.)

As will be discussed below, since plaintiff has adequately pled causes of action for disability discrimination against the Co-Op and the Board and "participation of an individual director in a corporation's tort is sufficient to give rise to individual liability" (*Id.* at 1), the individually named members of the Board—outside Paul Rosenberg and Elizabeth Wolgemuth (who were not board members at the time)—are not entitled to dismissal of plaintiff's claims under the FHA, NYSHRL, and NYCHRL.[1]

*The Business Judgment Rule and Dismissal Under CPLR 3211 (a) (1) and (a) (7)*

In *Matter of Levandusky*, the Court of Appeals held that the business judgment rule was the proper standard of judicial review of actions taken by the directors of a cooperative corporation. (*Levandusky*, 75 NY2d at 553.) The rule prohibits judicial inquiry into the actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes. (*Id.* at 537-538; *40 W 67th St. v Pullman*, 296 AD2d 120, 125-126 [1st Dept 2002].) Here, defendants contend that "the complaint does not lend itself to any determination that the Board's actions in denying the plaintiff's purchase application was based on anything other than her finance," especially in light of the fact that plaintiff reported zero income in 2021 while claiming over $200,000 in unreported income. (NYSCEF doc. no. 27 at 13, def. memo of law.) Since, as discussed above, unlawful discrimination is not protected by the business judgment rule (*see Maun v Edgemont at Tarrytown Condominium*, 156 AD3d 873, 875 [2d Dept 2017]), the Court addresses whether defendants have established, through documentary evidence, that their decision was free of discriminatory animus and, if not, whether plaintiff has adequately pled her discrimination causes of action.

As to the first question, defendants have not demonstrated that any of their evidence is unambiguous, authentic, and undeniable such that it definitely disposes of plaintiff's claims. Vice President Eric Usinger's affirmation does not, by definition, constitute documentary evidence that may be considered on a motion pursuant to CPLR 3211 (a) (1). (*See Correa v*

---

[1] Defendant asserted that these two individuals were not board members in December 2022. Plaintiff did not address the issue in her memorandum of law.

*Orient-Express Hotels, Inc.*, 84 AD3d 651, 51 [1st Dept 2011].) Elizabeth Usinger's notes from the December 2022 interview and the email correspondence between Usinger, Howard, and plaintiff's broker cannot be considered documentary either. While these emails certainly do establish the Board's not insignificant concern regarding the tax and financial information plaintiff submitted as part of her application for the apartment, they also clearly communicate, at the very least, unease over plaintiff's service dog and the health condition that might require them to provide her with an accommodation. (NYSCEF doc. no. 20 at 2, <u>emails</u> ["I believe certain members of the board will have questions about her service dog, so it may be helpful to include whatever service certification…would be applicable"]; ["If the disability is related to her medical condition (diabetes), it is fair for members of the board to request additional information demonstrating that the animal will help treat this disability"]; ["Adi's dog is also welcome to attend (the meeting)"].) In short, defendants have provided no conclusive evidence that, as they assert, plaintiff's service animal "had nothing to do with the decision to deny her application." (*See Gibson v 526 W 158th St. Hous. Dev. Fund Corp.*, 221 AD3d 455, 456 [1st Dept 2023] ["Although defendant urges that the motion court should have considered its evidence of a non-discriminatory motive for rejecting plaintiff's application, as the court determined, the documentary evidence did not utterly refute plaintiff's claim."])

As to whether plaintiff has adequately pled her discrimination causes of action (taking the factual allegations as true and resolving all inferences in her favor), the Court finds that she has. She has demonstrated that she is a member of a protected class under the FHA, NYSHRL, and NYCHRL, that she was qualified to purchase the apartment, and that the circumstances surrounding her denial—that the Board intensely questioned her about her health condition, service dog, and whether she, in fact, needed her dog, and then denied her application mere minutes later—gives rise to an inference of discrimination. (*See Gibson*, 221 AD3d at 455, citing *Sayeh 66 Madison Ave. Apt. Corp.*, 73 AD3d 459, 461 [1st Dept 2010].) Specifically with respect to her qualification, plaintiff avers that she put a $135,000 down payment after entering into the contract of sale (or 10% of the sale price), secured a loan for $715,000 from a bank lender with a loan to value ratio of approximately 52% (NYSCEF doc. no. 44), and held assets valued at approximately $1.5 million (NYSCEF doc. no. 45). [2] As such, plaintiff has adequately pled her three discrimination claims.

*Plaintiff Negligent Infliction of Emotional Distress*

Defendants contend that plaintiff's negligent infliction of emotional distress claim must be dismissed for failure to state a cause of action because she has failed to allege a breach of duty they owed her. (*See Taggart v Costabile*, 131 AD3d 243, 252-253 [2d Dept 2015] ["A breach of the duty of care resulting directly in emotional harm is compensable even though no physical injury occurred when the mental injury is a direct consequence, rather than a consequential result, of the breach and when the claim possesses some guarantee of genuineness."]) Defendants maintain that "on its face, the complaint fails to show that the actions of the Board, in furthering a legitimate business purpose, could be considered a direct breach of a duty owed to plaintiff." (NYSCEF doc. no. 27 at 14.) In opposition, plaintiff contends that this claim is adequately pled based upon "defendants' blatantly discriminatory actions," the fact that she was "subjected to

---

[2] The Court notes that, though defendants argue that their decision was purely based on plaintiff's financial situation, they have not advanced the argument that she was not qualified to purchase the apartment on this motion.

**151542/2023   HECHT, ADI vs. 89TH STREET OWNERS CORP. ET AL**   Page 5 of 7
**Motion No.  001**

outrageous comments" made by members of the Co-Op, and was falsely accused of tax fraud. (NYSCEF doc. no. 50 at 20, <u>plaintiff memo of law</u>.)

Plaintiff's opposition, however, does not identify a breach of any duty the Co-Op owed to her but rather describes only *intentional* conduct for which she seeks relief. Since intentional infliction of emotional distress, unlike negligent infliction, still requires extreme and outrageous conduct—or conduct that is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"—that plaintiff has failed to plead, this cause of action is dismissed. (*Compare Chanko v American Broadcasting Cos. Inc.*, 27 NY3d 46, 56 [2016] *with Brown v New York Design Ctr., Inc.* 215 AD3d 1, 7 [1st Dept 2023]; *see also Scifo v Taibi*, 198 AD3d 704, 705-706 [2d Dept 2021] [affirming dismissal of negligent infliction of emotional distress claim where it was premised only on allegations of intentional conduct: "Such causes of action must fail where no allegations of negligence appear in the pleadings"].)

Lastly, plaintiff has sufficiently alleged conduct that supports an award of punitive damages. (*See Stalker v Steward Tenants Corp.*, 93 AD3d 550, 552 [1st Dept 2012] [finding that the plaintiff's allegation alleging discrimination in housing based upon race, national origin, or age supported an award of punitive damages].)

Accordingly, for the foregoing reasons, it is hereby

ORDERED that the branch of defendants' motion to dismiss plaintiff's discrimination causes of action under the Fair Housing Act, the New York State Human Rights Law, and the New York City Human Rights Law pursuant to CPLR 3211 (a) (1) and (a) (7) is granted as to Paul Rosenberg and Elizabeth Wolgemuth but otherwise denied as to the remaining defendants; and it is further

ORDERED that the branch of defendants' motion to dismiss plaintiff's negligent infliction of emotional distress claim pursuant to CPLR 3211 (a) (7) is granted as to each defendant; and it is further

ORDERED that defendants' motion to dismiss plaintiff's request for punitive damages is denied; and it is further

ORDERED that counsel for plaintiff shall serve a copy of this order, along with notice of entry, on all parties, within ten (10) days of entry; and it is further

ORDERED that defendants shall answer the complaint within 20 days service of the notice of entry.

20241004161941DRAMSEUR38A5931CD37B435499198AA8BCBCEE44

**10/4/2024**

**DATE**

**DAKOTA D. RAMSEUR, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | ☐ REFERENCE |