[912 NYS2d 2]

GILL KENT, Respondent, v 534 EAST 11TH STREET et al., Appellants. (And a Third-Party Action.)

First Department, October 28, 2010

APPEARANCES OF COUNSEL

*O'Connor Redd, LLP*, White Plains (*John P. Grill* of counsel), for appellants.

*Himmelstein, McConnell, Gribben, Donoghue & Joseph*, New York City (*Serge Joseph* of counsel), for respondent.

### OPINION OF THE COURT

CATTERSON, J.

This action reaches us as a result of the plaintiff's attorneys reframing their arguments in a way obviously designed to evade the statute of limitations. This does not salvage plaintiff's complaint but serves only to illustrate why the motion court should have adhered to its original ruling granting summary judgment to the defendants, and not permitted revisitation by granting plaintiff's motion for reargument.

The plaintiff initially asserted causes of action in negligence, constructive eviction, damages and nuisance, but, on appeal she reframes these as causes of action arising out of a breach of contract. In her brief, the plaintiff states unequivocally: "the gravaman [*sic*] of this action is in breach of contract." More specifically, she details each of her four causes of action as a breach of the proprietary lease. For example, she states that her third cause of action is for "money damages based on defendants' negligent performance of *work required under the proprietary lease*" (emphasis added).

However, the plaintiff did not include a copy of the proprietary lease in any of her submissions to the court, and the lease therefore is not before this Court. This omission should in itself be sufficient reason to dismiss the complaint since it is well established that a court must know what an agreement contains before it can determine whether there has been a breach of that agreement. (*See e.g. Cobble Hill Nursing Home v Henry & War-*

*ren Corp.*, 74 NY2d 475, 482 [1989].) Further, the plaintiff has added, for the first time on appeal, a cause of action for breach of the warranty of habitability alleging that the defendants through negligent construction work caused her apartment to become contaminated with toxins and thus rendered it uninhabitable.

Even if this Court were to examine the claims in light of a breach of that warranty, it would not help the plaintiff. For the reasons set forth below, this Court agrees with the defendants that there is no evidence in the record, and discovery cannot yield any evidence, as a matter of law, to raise a triable issue of fact as to whether between 2002 and 2006 contaminants existed in the plaintiff's apartment at sufficient levels to constitute a breach of the warranty of habitability by the defendants.

This action arises from an incident in 2002, after defendants retained a contracting company to work on the roof of the plaintiff's building on East 11th Street, Manhattan. The plaintiff alleges that when work commenced, the contractors set up a scaffold outside plaintiff's living room window. The plaintiff claims that, at the end of each day, the workers threw rubble off the roof into the alley leading to the back yard, causing clouds of dust to enter plaintiff's apartment on a regular basis. According to the plaintiff's summons and complaint, this resulted in health problems for her.

*Four years later*, in 2006, the plaintiff hired JLC Environmental Consultants (hereinafter referred to as JLC) to study and report on the physical conditions of the apartment. Evan Browne, a JLC employee, investigated from July 2006 through August 2006, and issued a report on September 5, 2006. The report stated that the apartment contained heavy metals, but that the source of the metals was unclear.

Subsequently, JLC tested the apartment again. A report, dated October 19, 2006, stated that levels of heavy metal concentration were generally "below the detection limit."[1] Nevertheless, the plaintiff moved out of the apartment in November 2006 and sublet the premises to a third party.

Eighteen months after that report, in May 2008, the plaintiff commenced this action stating causes of action for: (1) nuisance; (2) money damages; (3) negligence; and (4) constructive evic-

---

1. This statement by the plaintiff's expert is a key component of her claim of contamination. The expert claims that the heavy metals exist but that they cannot be detected. No further analysis of this claim should even be necessary.

tion. The complaint further alleged that *"within a matter of days"* (emphasis added) after the start of the work, plaintiff began experiencing, inter alia, extreme fatigue and bronchial symptoms followed by bone and joint pain and swelling, skin eruptions, hair loss, loosening teeth, ridged and splitting nails, thyroid collapse, pulmonary disorder, weight gain and cognitive impairment affecting her memory, concentration and balance.

The defendants answered and set forth affirmative defenses, including statutes of limitations, failure to state a cause of action and destruction of evidence. At the time of the filing of the bill of particulars, the only material provided in support of the claim was the JLC report which indicated "a largely successful" cleanup in removing contaminated dust. The report alluded to the existence of the prior tests, and the defendants requested that those results be provided, if such tests existed. The plaintiff did not provide copies of such tests.

In December 2008, the defendants moved for summary judgment dismissing the complaint, or an order compelling the plaintiff to provide initial environmental testing results and to submit to a physical examination. The defendants also sought, inter alia, an order striking plaintiff's health ailments on the grounds that her complaint was not a personal injury action. The defendants argued that the action was barred by the statute of limitations, that there was a lack of causation between alleged toxic chemicals and plaintiff's complaints, that there was no proof that the plaintiff was exposed to any particular amount of toxic elements, and no proof of what the toxic elements were or whether there were sufficient quantities to cause harm.

The plaintiff opposed and submitted, for the first time, the previous unsworn reports of environmental testing. In reply, the defendants provided a sworn report of an expert who reviewed the new material consisting of the prior environmental reports provided by plaintiff. He opined that the results of the tests could not be used to support plaintiff's assertion of contaminants in the apartment from the renovation work outside.

The plaintiff moved, by order to show cause, to strike the reply or for leave to serve a surreply in response to the defendants' "new arguments." She also requested time to conduct further discovery since the summary judgment motion was made prior to the defendants' compliance with the requirement to supply photographs and documents relating to the renovation.

The defendants opposed, arguing that their expert evidence was not new material but was a response to the new evidence submitted by plaintiff. The plaintiff did not serve a reply.

By order dated March 19, 2009, the court granted the defendants' motion for summary judgment dismissing the complaint. (2009 NY Slip Op 30641[U].) The court concluded that the unsworn reports of Browne, the JLC inspector who took "environmental tests two years [*sic*] [it was in fact four years] after work was commenced" on the building, had no probative weight and failed to raise a triable issue of fact. (*Id.* at *6.) The court further held that plaintiff had not submitted any admissible evidence that plaintiff was subjected to toxins in the apartment, or any evidence that, if the toxins existed, they were caused by work performed on the building.

The plaintiff moved to renew and reargue the motion, submitting new materials including affidavits from Browne and an affirmation of the plaintiff's physician, Susan Richman, M.D. The defendants opposed and cross-moved for sanctions.

The plaintiff contended that the court failed to appreciate that the motion to dismiss was made prior to discovery. She also argued that the defendants raised new issues in their reply papers, and thus the plaintiff was unable to raise issues with the court to defeat the motion.

On November 16, 2009, the court granted the motion to reargue, and upon reargument, vacated its order of March 19, 2009. (2009 NY Slip Op 33243[U].) The court held that although it still believed that plaintiff's proof was insufficient to sustain the action, the plaintiff had not had an adequate opportunity to undertake discovery, particularly as it was alleged that the defendants had exclusive knowledge of evidentiary material sufficient to buttress plaintiff's allegations.

■ For the reasons set forth below, we reverse, and grant summary judgment in favor of the defendants, dismissing the complaint. As a threshold matter, the plaintiff's causes of action in constructive eviction, negligence and damage to property must be dismissed as statutorily time-barred. It is well settled that a cause of action for constructive eviction is governed by a one-year statute of limitations. (CPLR 215; *Jones v City of New York*, 161 AD2d 518, 518-519 [1st Dept 1990]; *Yokley v Henry-Clark Assoc.*, 170 Misc 2d 779, 781 [App Term, 2d Dept 1996] [finding a claim based on constructive eviction is actually one for wrongful eviction and is subject to the one-year statute of limitations].)

The plaintiff alleges that the contamination of her apartment occurred in 2002, and further alleges that contaminants were detected in 2006. She moved out in November 2006. Her sum-

mons and complaint were filed in May 2008, approximately 18 months later. Hence, the cause of action for constructive eviction is time-barred.

■ Further, causes of action for negligence and for injury to property are governed by CPLR 214, which provides for a three-year statute of limitations. Likewise, a cause of action for injury to property caused by exposure to toxins must be commenced within three years either from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered, whichever is earlier. (CPLR 214-c [2].)

The plaintiff's complaint is unequivocal that, due to the defendants'· negligence, clouds of dust entered her apartment in June 2002 and contaminated her living and work space. Thus, the alleged damage to property and negligence occurred in 2002—six years prior to the filing of the complaint. Therefore, these causes of action as specified in the complaint are also time-barred.

■ It is evident that the plaintiff's subsequent attempts to persuade this Court that all her claims sound in breach of contract are simply a maneuver to evade the statute of limitations. The plaintiff now argues that the damage to property and pecuniary interest and the monetary damages arising out of remediating the hazardous conditions, as well as the dimunition in value of her investment, are a breach of article 2 of the lease. However, the plaintiff's breach of contract claims, while within the six-year statute of limitations of CPLR 213, must fail because, as the defendants correctly assert, the contract to which the plaintiff refers, that is, the proprietary lease, is not before the Court.

The existence of a proprietary lease is not disputed, but the Court must be able to determine what. the provisions of the agreement are before it can conclude that there has been a breach. (*Cobble Hill Nursing Home*, 74 NY2d at 482.) The plaintiff's failure to submit the proprietary lease, therefore, precludes recovery on a breach of contract claim.

■ The plaintiff's complaint does not include a cause of action for breach of implied ·contract provisions. Nevertheless, since an implied warranty of habitability exists in every residential lease (*see Granirer v Bakery, Inc.*, 54 AD3d 269 [1st Dept 2008]), the plaintiff rests on this cause of action at the last minute. This does not help the plaintiff. The implied warranty of habitability sets forth a minimum standard to protect ten-

ants against conditions that render residential premises uninhabitable or unuseable. (Real Property Law § 235-b; *see also Solow v Wellner*, 86 NY2d 582 [1995].) Tenants alleging breach of the warranty of habitability must provide evidence sufficient to support their claims. (*See Park W. Mgt. Corp. v Mitchell*, 47 NY2d 316, 328 [1979], *cert denied* 444 US 992 [1979]; *Minjak Co. v Randolph*, 140 AD2d 245 [1st Dept 1988].)

In this case, as the motion court correctly found in its initial order, the plaintiff did not submit any admissible evidence that she was subjected to toxins in the apartment or any evidence that, if the toxins existed, they were caused by work performed on the building in 2002.

The court allows expert testimony only where the principles and methodology relied upon by the expert have gained general acceptance within the scientific community. (*People v Wesley*, 83 NY2d 417, 422-423 [1994].) The record reflects that the plaintiff's expert, Evan Browne of JLC, possessed only an asbestos inspector's certification, and the plaintiff does not allege asbestos contamination. Also, the unsworn reports of alleged environmental testing submitted in opposition to the motion for summary judgment were insufficient to rebut defendants' entitlement to summary judgment. (*See Briggs v 2244 Morris L.P.*, 30 AD3d 216 [1st Dept 2006] [hearsay is insufficient to warrant denial of summary judgment where, as here, it is the only evidence submitted in opposition].)

Even if we were to accept, arguendo, that the unsworn reports had any probative value, the most they could demonstrate is that there was some contamination in the unit in July 2006. There is no evidence that such contaminants were in the apartment in 2002, or at any time prior to July 2006, or that they were a result of construction work in 2002. Further, according to the plaintiff's expert, there was no detectable contamination in the apartment in September 2006. The plaintiff's allegation that hazardous conditions still exist is based on Browne's statement that "[o]bviously, this assessment [of decontamination] did not apply to the study or office, which was not cleaned or decontaminated, *and which I did not test*" (emphasis added). This is insufficient evidence to raise a triable issue of fact as to existing contamination in the plaintiff's study especially in view of an e-mail dated October 19, 2006, written by Browne, which stated: "I think that you can sublet with peace of mind."

There is also no evidence of any causal connection between the alleged contamination and the plaintiff's alleged ailments

sufficient to raise a triable issue of fact as to the breach of warranty of habitability. The plaintiff offers the affirmation of physician Susan Richman, M.D. But the plaintiff did not consult the physician until 2006.

However, in any cause of action that asserts constructive eviction or breach of warranty of habitability due to contamination affecting health, the plaintiff is obliged to produce some evidence of a causal connection. (*See 360 W. 51st St. Realty, LLC v Cornell*, 14 Misc 3d 90, 91 [App Term, 1st Dept 2007].) Here, the physician's affirmation rests only on the plaintiff's representations that her shortness of breath and thyroid problems started with the defendants' roof repair work in 2002. Further, the physician's recommendation that the plaintiff should move for health reasons was based solely on the plaintiff's report as to contamination in her apartment. Indeed, no reliable air samples were ever taken in the apartment,[2] and thus Dr. Richman's conclusion that plaintiff's symptoms were "exacerbated" by inhalation of toxic particles was totally unfounded. Hence, the physician's affirmation does not reach the level of sufficient evidence in order for the plaintiff to prevail in her opposition to summary judgment.

Finally, the absence of discovery should not bar summary judgment in favor of the defendants. A reversal of summary judgment would be appropriate only if the plaintiff can show that additional discovery will lead to relevant evidence. (*Auerbach v Bennett*, 47 NY2d 619, 636 [1979]; *Arpi v New York City Tr. Auth.*, 42 AD3d 478, 479 [2d Dept 2007].) Plaintiff's mere hope of locating additional evidence does not establish a basis for reversal of summary judgment; rather there must be an actual likelihood. (*See Neryaev v Solon*, 6 AD3d 510 [2d Dept 2004].)

Here, the plaintiff has failed to establish how discovery will uncover further evidence or material in the exclusive possession of the defendants, as is required under CPLR 3212 (f). (*See Berkeley Fed. Bank & Trust v 229 E. 53rd St. Assoc.*, 242 AD2d 489 [1st Dept 1997].) The plaintiff asserted only that photographs, documents and "other facts" relating to the renovation work are within the exclusive knowledge and control of the defendants and that she had no opportunity to conduct such discovery.

---

2. In his affidavit, Browne claimed to be "licensed as an Air Sampling Technician." However, plaintiff has failed to submit any license or certification of his qualifications to sample air.

Such discovery, however, as the plaintiff acknowledges, relates only to the roof renovation work, and thus cannot constitute relevant evidence as a matter of law. Even if the documentation or photographs showed that the brick or roofing, both of which were demolished in 2002, was contaminated, it would not render the plaintiff's claims as to negligence or damage to property or constructive eviction any less time-barred. Nor could such evidence establish that the plaintiff's apartment, inside the building, was contaminated to a level sufficient to breach the warranty of habitability.

Accordingly, the order of the Supreme Court, New York County (Walter B. Tolub, J.), entered November 16, 2009, which, to the extent appealed from, granted plaintiff's motion for reargument of a prior order summarily dismissing the complaint and vacated that order and reinstated the complaint, should be reversed, on the law, without costs, and summary judgment granted to defendants dismissing the complaint. The Clerk is directed to enter judgment accordingly.

ROMÁN, J. (concurring). I write separately because while I agree with the majority's decision reversing the motion court's order, beyond determining whether reargument was warranted, I do not believe that it was necessary to reach the other issues reached, discussed and resolved by the majority. In granting defendants' initial motion for summary judgment, the motion court neither misapplied the law nor misapprehended the facts, thereby precluding the grant of reargument. Given the motion court's decision and the salient arguments made in favor of reargument, reversal is warranted insofar as CPLR 3212 (f) did not warrant denial of defendants' motion for summary judgment and it was thus error to grant reargument on this basis.

The instant action is for nuisance, money damages, negligence and constructive eviction. Plaintiff, a resident shareholder within a residential multiple dwelling owned and managed by defendants, alleges that beginning on June 3, 2002, and continuing through the early fall of that same year, as a result of construction work performed at defendants' behest, she and her apartment were exposed to toxic contaminants.

On March 19, 2009, upon consolidating defendants' motion for, inter alia, summary judgment and plaintiff's motion seeking to, inter alia, strike defendants' reply papers, the motion court granted defendants' motion for summary judgment, finding that plaintiff failed to submit admissible evidence demonstrating that she had been exposed to toxins within her apartment.

Essentially the motion court found that defendants' proof evinced an absence of any elevated toxicity levels within plaintiff's apartment on the date tests were performed. Thereafter, on November 10, 2009, the motion court granted plaintiff's motion seeking reargument of its decision granting defendants summary judgment, premising such relief on plaintiff's allegations that "[d]efendants have exclusive knowledge of evidentiary material sufficient to buttress [p]laintiff's allegations." (2009 NY Slip Op 33243[U], *7.) The motion court thus vacated its decision dated March 19, 2009 (2009 NY Slip Op 30641[U]), granting defendants summary judgment, and defendants now appeal.

A motion for reargument is addressed to the court's discretion and is designed to afford a party an opportunity to establish that the court overlooked or misapprehended the relevant facts, or misapplied any controlling principle of law (*300 W. Realty Co. v City of New York*, 99 AD2d 708, 709 [1984], *appeal dismissed* 63 NY2d 952 [1984]; *Foley v Roche*, 68 AD2d 558, 567 [1979]). Reargument is not a vehicle permitting a previously unsuccessful party to once again argue the very questions previously decided or to assert new, never previously offered arguments (*Foley* at 567; *William P. Pahl Equip. Corp. v Kassis*, 182 AD2d 22, 27 [1992], *lv dismissed in part* 80 NY2d 1005 [1992]). Here, plaintiff's motion for reargument was granted based upon her previously asserted and disregarded argument that defendants had failed to provide necessary discovery, exclusively in their possession, thereby precluding summary judgment.

Pursuant to CPLR 3212 (f), a motion for summary judgment will be denied if it appears that facts necessary to oppose the motion exist, but are unavailable to the opposing party. This is particularly true when the facts necessary to oppose the motion are within the exclusive knowledge of the moving party (*Esposito v Metropolitan Transp. Auth.*, 264 AD2d 370, 371 [1999]; *Franklin Natl. Bank of Long Is. v De Giacomo*, 20 AD2d 797, 797 [1964]). Insofar as defendants' motion for summary judgment was granted on grounds that the record was bereft of admissible proof demonstrating elevated toxicity levels within plaintiff's apartment, it is inconceivable how the discovery sought by plaintiff from defendants—photographs and other documents regarding the construction work being performed *outside* her apartment—would have allowed her to successfully controvert defendants' prima facie showing that plaintiff's apartment, when tested, evinced no toxins. None of the

discovery sought would have demonstrated the level of toxins, if any, within plaintiff's apartment and thus plaintiff's mere hope that somehow further discovery will yield evidence to prove her case is insufficient for denial of summary judgment (*Jones v Surrey Coop. Apts.*, 263 AD2d 33, 38 [1999]). Thus, CPLR 3212 (f) did not mandate denial of defendants' initial motion for summary judgment, and in granting the same the motion court neither misapplied the law nor misapprehended the facts. Accordingly, granting plaintiff's motion for reargument was improper.

Having determined that reargument was improper, the motion court's order granting defendants summary judgment stands for the reasons therein stated and I think that it is unnecessary to delve into the legion of other issues discussed by the majority in its decision.

ANDRIAS, J.P., RENWICK and RICHTER, JJ., concur with CATTERSON, J.; ROMÁN, J., concurs in a separate opinion.

Order, Supreme Court, New York County, entered November 16, 2009, reversed, on the law, without costs and summary judgment granted to defendants dismissing the complaint. The Clerk is directed to enter judgment accordingly.