| **Liberson v Feldman** |
|:---:|
| 2026 NY Slip Op 30859(U) |
| March 9, 2026 |
| Supreme Court, New York County |
| Docket Number: Index No. 160635/2015 |
| Judge: Hasa A. Kingo |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **HON. HASA A. KINGO**

*Justice*

PART 65M

-------------------------------------------------------------------------------X

JOEL LIBERSON,

Plaintiff,

- v -

ZIEL FELDMAN, HFZ 235 WEST 75TH STREET OWNER, LLC, HFZ CAPITAL GROUP, LLC, HFZ PROPERTY MANAGEMENT, NAF CONSTRUCTION MANAGEMENT, LLC, FORTRESS INVESTMENT GROUP, LLC,

Defendant.

-------------------------------------------------------------------------------X

INDEX NO.          160635/2015

MOTION DATE          N/A

MOTION SEQ. NO.          007

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 007) 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 260, 261, 262, 263, 264, 265, 266, 267, 268, 269, 270, 271, 272, 273, 274, 275, 279, 281

were read on this motion for                                    SUMMARY JUDGMENT                                    .

Defendants Ziel Feldman, HFZ 235 West 75 Street Owner, LLC, HFZ Capital Group, LLC and HFZ PR (collectively "Defendants") move pursuant to CPLR § 3212 for summary judgment dismissing the complaint in its entirety. Plaintiff Joel Liberson ("Plaintiff") previously cross-moved for spoliation sanctions, but that cross-motion was heard and denied on the record (Nov. 2, 2023). The court therefore considers only Defendants' motion for summary judgment, which seeks dismissal of all causes of action (negligence/toxic tort, warranty of habitability, contract and covenant of quiet enjoyment, negligent misrepresentation, New York City Human Rights Law ("NYCHRL") retaliation, and piercing the corporate veil) on the grounds that no triable issue of fact exists.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was a rent-stabilized tenant at 235 West 75th Street in Manhattan. Beginning in April 2011, he lived in Apartment 7L for three years. In April 2014, after his lease expired, plaintiff moved (month-to-month) into Apartment 12C. At that time the building (owned and controlled by defendants) was undergoing a condominium conversion and extensive interior renovations. On the morning of November 21, 2014, plaintiff awoke feeling ill. He walked into the hallway and observed renovation work in neighboring Apartment 12E and dust on the hall floor. Shortly thereafter, plaintiff consulted physicians and was diagnosed with an apparent "chemical inhalation injury" and vocal cord dysfunction ("VCD"). He attributes these injuries to exposure to some unspecified hazardous chemical or toxin released by the renovation work in the building.

160635/2015   LIBERSON, JOEL vs. FELDMAN, ZIEL
Motion No.  007

Page 1 of 13

[* 1]

In March 2015 plaintiff sued defendants, asserting causes of action for negligence (toxic tort), breach of the implied warranty of habitability, breach of contract and the covenant of quiet enjoyment, negligent misrepresentation, and retaliation under the New York City Human Rights Law (NYCHRL) – allegedly based on a claimed need for accommodations. Plaintiff also sought to pierce the corporate veil to hold defendant Ziel Feldman (the building's principal) personally liable. After discovery, defendants moved for summary judgment on October 11, 2022 (NYSCEF Doc No. 203). Plaintiff cross-moved for sanctions for alleged spoliation of evidence on April 24, 2023 (NYSCEF Doc No. 224). On November 2, 2023, Judge Hagler heard argument on both motions; from the bench he denied plaintiff's cross-motion. The transcript of that hearing was filed September 25, 2025. The remaining summary judgment motion was re-noticed for oral argument on March 10, 2026. The parties are also scheduled for a settlement conference on March 12, 2026. The court now rules on Defendants' summary judgment motion.

## ARGUMENTS

Defendants contend that plaintiff has no admissible evidence of any toxic exposure or of causation. They emphasize that plaintiff never identified any specific chemical or toxin to which he was allegedly exposed, nor did anyone test the air or dust at the premises for contaminants. The only evidence of contamination is plaintiff's belief, based on his feeling ill and seeing dust in the hallway, that "it must have been my building." Defendants assert that conclusion is purely speculative and insufficient as a matter of law. They point to an affidavit from their expert, Dr. James Lineback ("Dr. Lineback"), who examined plaintiff's records and opined that plaintiff suffers from gastroesophageal reflux disease ("GERD"), not VCD, and that there is no evidence any chemical exposure occurred. Defendants argue this expert opinion underscores that plaintiff's alleged injuries have a non-toxic explanation.

Defendants further argue that the other claims are likewise unsupported. According to defendants, there is no proof Apartment 12C was uninhabitable. Indeed, defendants insist that they accommodated plaintiff by assigning him 12C after his lease, and plaintiff knew about the renovation when he moved. Defendants further contend plaintiff has no evidence of any misrepresentation or fiduciary duty, nor of any contractual breach or disturbance of quiet enjoyment. As to the retaliation claim, defendants note plaintiff did not allege any disability or request for accommodation, and his lease simply ended – no adverse action "because of" any protected activity occurred.

Finally, they contend plaintiff's veil-piercing claim is baseless: there is no evidence Ziel Feldman abused the corporate form or personally participated in wrongdoing.

Plaintiff argues that triable issues of fact exist on causation and other elements of his claims. He contends that summary judgment cannot be granted by defendant "merely poking holes" in his case; defendants must affirmatively disprove causation, which they have not done. Plaintiff notes that since no one tested for toxins, defendants cannot conclusively say no harmful substance was present. He points out that the expert affidavit submitted by defendants (Dr. Lineback) does not refute that plaintiff had VCD due to dust, it only opines he has GERD. In plaintiff's view, that does not negate the possibility that renovation fumes caused vocal cord problems.

160635/2015   LIBERSON, JOEL vs. FELDMAN, ZIEL
Motion No. 007

Page 2 of 13

2 of 13

[* 2]

Plaintiff also submits his own expert reports (though not strictly required to oppose summary judgment) linking the renovation to his VCD. He maintains these raise triable issues of general and specific causation. Plaintiff disputes that summary judgment is appropriate on the ancillary claims: he suggests a question whether defendants ever conveyed knowledge about safety of the premises, and whether Feldman exerted control or engaged in misconduct. He argues that without resolving these factual issues, summary disposition is improper.

## DISCUSSION

A motion for summary judgment "shall be granted if, upon all the papers and proofs submitted, the cause of action or defense shall be established sufficiently to warrant the Court as a matter of law in directing judgment in favor of any party" (CPLR § 3212[b]). "The proponent of a motion for summary judgment must demonstrate that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law" (*Dallas-Stephenson v Waisman*, 39 AD3d 303, 306 [1st Dept 2007]). The movant's burden is "heavy," and "on a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party" (*William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh*, 22 NY3d 470, 475 [2013][internal quotation marks and citation omitted]). Upon proffer of evidence establishing a *prima facie* case by the movant, the party opposing a motion for summary judgment bears the burden of producing evidentiary proof in admissible form sufficient to require a trial of material questions of fact (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). "A motion for summary judgment should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility" (*Ruiz v Griffin*, 71 AD3d 1112, 1115 [2d Dept 2010][internal quotation marks and citation omitted]). In reviewing a summary judgment motion, the court's role is issue-finding, not credibility assessment (*Henderson v. City of New York*, 178 AD2d 129, 130 [1st Dept 1991]).

In toxic-tort cases, a plaintiff bears the burden of establishing causation through competent expert proof addressing both general and specific causation (*see Parker v Mobil Oil Corp.*, 7 NY3d 434, 448–449 [2006]). Defendants moving for summary judgment are not required to conclusively disprove causation; however, they must establish prima facie entitlement to judgment as a matter of law by demonstrating that the plaintiff lacks sufficient evidence of causation or that the alleged exposure could not have caused the injury (*see Lotrean v 3M Co.*, 243 AD3d 414 [1st Dept 2025]). In other words, the defendant cannot simply argue that plaintiff could not affirmatively prove causation, but rather it must affirmatively prove, as a matter of law, that there was no causation (*id.*). Once a defendant meets that initial burden, the burden shifts to the plaintiff to produce admissible evidence raising a triable issue of fact.

In toxic-tort litigation, courts require proof both that the substance in question is capable of causing the asserted injury ("general causation") and that the plaintiff was exposed to the substance in sufficient quantities to cause the particular injury ("specific causation") (see *Parker v Mobil Oil Corp.*, 7 NY3d at 448–449). As the Court of Appeals explained in *Parker*, an expert opinion on causation must set forth evidence that the plaintiff was exposed to a toxin, that the toxin is capable of causing the particular illness (general causation), and that the plaintiff was exposed to sufficient levels of that toxin to cause the illness (specific causation) (*id.* at 448–449). Thus,

[* 3]

there must be evidence that the plaintiff was exposed to levels of the alleged toxin known to cause the kind of harm claimed (*id.* at 448; *see also Lotrean*, 243 AD3d at 414-415).

Although exact mathematical quantification of exposure is not always required, a plaintiff must nevertheless present expert testimony grounded in accepted scientific methodology demonstrating sufficient exposure and a causal relationship between the toxin and the injury (see *Parker v Mobil Oil Corp.*, 7 NY3d at 448–449; *Lotrean*, 243 AD3d at 414-415). Conclusory or speculative assertions are insufficient. In *Parker*, for example, the Court of Appeals rejected an expert's opinion that the plaintiff had experienced "far more exposure" to gasoline vapors than others, finding that such a general and subjective assertion was "plainly insufficient to establish causation" (*Parker*, 7 NY3d at 449). Rather, the expert must meaningfully connect the alleged toxic component to the specific disease at issue—such as benzene exposure in gasoline to acute myelogenous leukemia in *Parker* (*id.* at 448–449).

Consistent with these principles, the Appellate Division, First Department has recently reiterated that plaintiffs fail to raise a triable issue of fact on causation where their experts cannot identify the specific substance involved or meaningfully quantify the plaintiff's exposure to it (*see Lotrean* 243 AD3d at 414-415, citing *Parker v Mobil Oil Corp.*, 7 NY3d 434, and *Nemeth v Brenntag N. Am.*, 38 NY3d 336 [2022]).

Here, defendants contend that plaintiff has failed to identify any specific toxin or provide any environmental testing demonstrating the presence of a hazardous substance. Defendants rely primarily on the affidavit of Dr. Lineback, who opines that (1) there is no evidence plaintiff was exposed to any hazardous chemical and (2) plaintiff's symptoms are more consistent with gastroesophageal reflux disease ("GERD") than with an inhalation injury. Defendants argue that these conclusions negate causation as a matter of law. Viewed under the governing standards discussed above, however, these submissions fail to satisfy defendants' initial prima facie burden.

First, an expert who opines on causation must base that opinion on a reliable foundation grounded in the record and accepted methodology (*see Lotrean v 3M Co.*, 243 AD3d at 414-415). Here, although Dr. Lineback reviewed plaintiff's medical records and concluded that plaintiff's symptoms are attributable to GERD and that no chemical exposure has been demonstrated, defendants have offered no expert analysis of the renovation work itself or the composition of any dust or materials generated during that work. Notably, Dr. Lineback does not explain why dust or airborne byproducts from renovation activities could not have caused or exacerbated vocal cord dysfunction ("VCD"). Critically, defendants have not submitted an affidavit from a toxicologist, industrial hygienist, or other environmental expert attesting that no hazardous substances were present during the renovation activities or that any substances potentially present were incapable of causing VCD. Nor have defendants produced environmental sampling, air testing, or documentary evidence—such as Material Safety Data Sheets—demonstrating that no toxic irritants were present in the building at the relevant time.

Under *Parker v Mobil Oil Corp.*, 7 NY3d 434, 448–449 (2006), and *Nemeth v Brenntag N. Am.*, 38 NY3d 336, 342–343 (2022), a plaintiff ultimately must establish both the identity of the toxin and sufficient exposure levels to support causation. However, on a defendant's motion for summary judgment, the burden rests initially with the defendant to demonstrate the absence of

160635/2015   LIBERSON, JOEL vs. FELDMAN, ZIEL                         Page 4 of 13
Motion No.  007

4 of 13

such proof. Here, defendants have not affirmatively established that no such exposure occurred; rather, they have relied principally on the absence of testing and on perceived deficiencies in plaintiff's proof. As the Appellate Division, First Department has repeatedly observed, "a defendant's prima facie burden is not met merely by pointing out gaps or weaknesses in plaintiff's case" (*Dyer v Amchem Prods., Inc.*, 207 AD3d 408, 410 [1st Dept 2022]).

In short, defendants have failed to offer an affirmative expert opinion demonstrating the absence of any causal connection between the renovation activities and plaintiff's alleged respiratory condition. Plaintiff, by contrast, has submitted medical diagnoses of VCD from treating physicians and has proffered expert and medical evidence indicating that his symptoms are consistent with chemical inhalation. Although defendants' expert attributes plaintiff's symptoms to GERD, plaintiff disputes that diagnosis and relies on contrary medical opinions. This conflicting medical evidence raises a classic factual dispute as to whether plaintiff's respiratory symptoms stem from an inhalational exposure associated with the building's renovation activities or from an unrelated medical condition. Under settled summary judgment principles, such credibility and causation disputes are for the trier of fact to resolve.

Accordingly, defendants' motion cannot succeed with respect to plaintiff's negligence and toxic-tort claims. Viewing the evidence in the light most favorable to plaintiff, as the nonmoving party (*see Kaufman v Hirsch*, 2024 NY Slip Op. 31101[U], *4 [Sup Ct, NY County 2024]), the court concludes that triable issues of fact remain as to both general and specific causation. Plaintiff disputes defendants' assertion that he suffers from GERD and instead maintains that he developed VCD as a result of inhaling renovation dust generated in the building. If credited, an expert could potentially link known irritants commonly associated with renovation work—such as formaldehyde, volatile organic compounds, or other airborne particulates—to plaintiff's respiratory condition. In the absence of any contrary industrial hygiene or environmental evidence negating the possibility of such exposure, plaintiff's circumstantial evidence—including the timing of his symptoms, the presence of visible dust, and contemporaneous renovation activity—raises a triable question of fact as to whether airborne irritants generated during the renovation caused or contributed to his condition.

Defendants' argument that no air samples were taken does not compel dismissal as a matter of law. Courts have cautioned against imposing an evidentiary burden so exacting that plaintiffs are effectively required to produce scientific proof that may be impossible to obtain after the fact (*see Lotrean v 3M Co.*, 243 AD3d at 414-415). While plaintiff's inability to identify the precise toxin is certainly a challenge for his case at trial, it is not necessarily fatal at the summary judgment stage, particularly where the surrounding circumstances and medical evidence support a plausible causal theory.

Because defendants have not "unequivocally establish[ed]" that plaintiff was not exposed to any harmful substance or that such exposure could not have caused his alleged injury, summary judgment dismissing the negligence and toxic-tort claims must be denied.

By contrast, defendants are entitled to summary judgment on each of the remaining causes of action, for lack of any triable issue:

160635/2015   LIBERSON, JOEL vs. FELDMAN, ZIEL
Motion No.  007

Page 5 of 13

5 of 13

[* 5]

### I.    Warranty of Habitability

Plaintiff's claim for breach of the implied warranty of habitability cannot survive summary judgment. Under Real Property Law § 235-b, every residential lease carries an implied warranty that the premises "are fit for human habitation and for the uses reasonably intended by the parties," and that occupants will not be subjected to conditions that are "dangerous, hazardous or detrimental" to their "life, health or safety" (*Park W. Mgt. Corp. v Mitchell*, 47 NY2d 316, 327 [1979], cert denied 444 US 992 [1979]). The purpose of the statute is to ensure that tenants receive residential premises that are safe and livable, but liability arises only where a landlord permits conditions that materially affect the habitability of the premises (*id.* at 327–328).

To establish a breach of the warranty of habitability, a tenant must demonstrate the existence of a condition that renders the apartment unsafe or unfit for habitation and that the landlord had actual or constructive notice of that condition and a reasonable opportunity to remedy it (*see Kent v 534 E. 11th St.*, 80 AD3d 106, 113–114 [1st Dept 2010]). The statute does not impose strict liability for any inconvenience or discomfort associated with residential living; rather, it requires proof of a substantial defect affecting the habitability of the premises (*Park W. Mgt. Corp.*, 47 NY2d at 328).

Here, the record contains no evidence that Apartment 12C—the apartment plaintiff occupied at the time of the alleged incident—contained any dangerous, hazardous, or uninhabitable condition within the meaning of Real Property Law § 235-b. Plaintiff has not identified any physical defect in the apartment itself, nor has he produced environmental testing, inspection reports, or other admissible evidence demonstrating that the unit contained hazardous levels of contaminants. To the contrary, the undisputed record reflects that plaintiff knowingly entered into a month-to-month tenancy in Apartment 12C while renovation work was ongoing elsewhere in the building. While the existence of construction activity in a building may give rise to inconvenience or temporary disruption, it does not, without more, establish a breach of the statutory warranty (*see Kent v 534 E. 11th St.*, 80 AD3d at 113–114).

Courts addressing similar claims premised on alleged exposure to construction dust have required proof that contaminants were actually present within the tenant's apartment at levels sufficient to render the premises uninhabitable. In *Kent*, for example, the Appellate Division, First Department, rejected warranty-of-habitability claims where the record contained no competent evidence demonstrating that dust or contaminants reached the plaintiff's apartment in quantities sufficient to constitute a hazardous condition (*id.* at 114). As the court explained, the absence of proof linking construction activity to a dangerous condition within the apartment itself is fatal to such a claim.

The same deficiency is present here. Plaintiff has offered no evidence that Apartment 12C was contaminated, defective, or otherwise unfit for residential occupancy. Nor has plaintiff presented evidence that defendants had notice of any dangerous condition within that apartment requiring remediation. Without proof of a specific condition in the apartment that materially affected habitability, plaintiff cannot establish a breach of the statutory warranty.

160635/2015   LIBERSON, JOEL vs. FELDMAN, ZIEL                                          Page 6 of 13
Motion No.  007

6 of 13

Accordingly, because the record is devoid of evidence demonstrating the existence of an "injurious defect" or hazardous condition within Apartment 12C (see *Park W. Mgt. Corp.*, 47 NY2d at 327–328), defendants have established their entitlement to judgment as a matter of law on plaintiff's warranty-of-habitability claim. Plaintiff has failed to raise a triable issue of fact in opposition. The branch of defendants' motion seeking summary judgment dismissing that claim is therefore granted.

## II. Negligent Misrepresentation

Plaintiff's claim sounding in negligent misrepresentation likewise fails as a matter of law. To sustain such a claim, a plaintiff must demonstrate that the defendant owed a duty to impart correct information arising from a special relationship of trust or confidence, that the defendant made a false representation of material fact, and that the plaintiff reasonably relied on that representation to his detriment (*Kimmell v Schaefer*, 89 NY2d 257, 263–264 [1996]). The Court of Appeals has emphasized that such a duty does not arise in the ordinary commercial or contractual context; rather, it requires proof of a relationship so close as to approach that of privity, often characterized by the defendant's possession of unique or specialized expertise or by a relationship of trust and confidence giving rise to a duty to speak with care (*id.* at 263).

Plaintiff has failed to identify any facts in the record establishing the existence of such a special relationship between himself and the defendants. The relationship between a landlord and tenant, standing alone, does not create the kind of fiduciary or quasi-fiduciary duty required to sustain a negligent misrepresentation claim (*see Kimmell*, 89 NY2d at 263–264). Nor has plaintiff pointed to any evidence demonstrating that defendants possessed specialized expertise upon which plaintiff was invited to rely in making decisions about his tenancy.

Equally fatal to the claim is plaintiff's failure to identify any actionable misrepresentation. A negligent misrepresentation claim requires proof that the defendant supplied incorrect information that the plaintiff justifiably relied upon (*id*. at 263). Here, plaintiff has not identified any statement by defendants that was false or misleading. To the contrary, the undisputed record reflects that plaintiff was fully aware that renovation work was ongoing in the building when he entered into his tenancy in Apartment 12C. Under these circumstances, plaintiff cannot plausibly claim that he relied upon any representation by defendants suggesting that the building was free from construction activity or related conditions.

Absent proof that defendants supplied materially false information within the context of a special relationship and that plaintiff reasonably relied upon such information to his detriment, the essential elements of negligent misrepresentation cannot be established. Because plaintiff has failed to raise a triable issue of fact as to either the existence of a special relationship or any actionable misrepresentation, defendants are entitled to judgment as a matter of law dismissing this cause of action (*see Kimmell*, 89 NY2d at 263–264).

Accordingly, the branch of defendants' motion seeking summary judgment dismissing the negligent misrepresentation claim is granted.

## III. Breach of Contract / Covenant of Quiet Enjoyment

160635/2015  LIBERSON, JOEL vs. FELDMAN, ZIEL
Motion No.  007

Page 7 of 13

7 of 13

[* 7]

Plaintiff's claim sounding in breach of contract, which is framed primarily as a breach of the implied covenant of quiet enjoyment, likewise fails as a matter of law. The covenant of quiet enjoyment, implied in every lease, protects a tenant's right to possession and use of the leased premises without substantial interference by the landlord. To prevail on such a claim, however, a tenant must demonstrate that the landlord engaged in conduct that substantially and wrongfully interfered with the tenant's possession of the premises, typically through an actual eviction or a constructive eviction (*see Barash v Pennsylvania Term. Real Estate Corp.*, 26 NY2d 77, 83 [1970]). Absent such a deprivation of possession, a claim for breach of the covenant of quiet enjoyment cannot be sustained.

Here, the undisputed record demonstrates that plaintiff entered into his tenancy in Apartment 12C with full knowledge that renovation work was underway in the building. The mere existence of construction activity, standing alone, does not constitute the type of substantial interference with possession required to establish a breach of the covenant. Nor does the record contain any evidence that defendants excluded plaintiff from the apartment or otherwise deprived him of possession.

Indeed, plaintiff remained in possession of Apartment 12C following the alleged incident and did not vacate the premises as a result of any affirmative action by defendants. Rather, plaintiff's own testimony reflects that he chose to leave the building after experiencing symptoms he attributes to exposure from construction activity. A tenant who voluntarily vacates the premises without surrendering possession in response to landlord misconduct cannot establish constructive eviction (*see Barash*, 26 NY2d at 83). Constructive eviction requires proof that the landlord's wrongful acts substantially and materially deprived the tenant of the beneficial use and enjoyment of the premises, and that the tenant vacated the premises within a reasonable time thereafter as a direct consequence of that deprivation (*id.*). Those circumstances are not present here.

To the contrary, the record indicates that defendants attempted to accommodate plaintiff during the relevant period, including facilitating his move to Apartment 12C while renovation work was ongoing elsewhere in the building. Such conduct is inconsistent with the type of wrongful interference required to sustain a claim for breach of the covenant of quiet enjoyment.

Because plaintiff has failed to demonstrate either an actual eviction or a constructive eviction—or any other conduct by defendants that substantially interfered with his possession of the premises—his quiet enjoyment claim cannot be maintained as a matter of law (*see Barash*, 26 NY2d at 83). To the extent plaintiff's breach-of-contract claim is framed more broadly, it fails for the same reasons. The record reflects that plaintiff's tenancy had converted to a month-to-month arrangement, and plaintiff has identified no enforceable contractual provision that defendants allegedly breached during that period.

Accordingly, defendants have established their entitlement to judgment as a matter of law dismissing the causes of action for breach of contract and breach of the covenant of quiet enjoyment, and plaintiff has failed to raise a triable issue of fact in opposition. The branches of defendants' motion seeking summary judgment dismissing those claims are therefore granted.

## IV.   NYCHRL Retaliation

[* 8]

Plaintiff's claim for retaliation under the NYCHRL likewise fails as a matter of law. The NYCHRL makes it an unlawful discriminatory practice for a housing provider to retaliate against an individual because that individual has opposed conduct prohibited by the statute or has exercised rights protected by the law (Administrative Code of City of NY § 8-107[7]). To establish a prima facie claim of retaliation under the NYCHRL, a plaintiff must demonstrate that (1) he engaged in a protected activity, such as requesting a reasonable accommodation or opposing discriminatory conduct; (2) the defendant was aware of that protected activity; (3) the defendant thereafter took an action that was reasonably likely to deter a person from engaging in such activity; and (4) a causal connection exists between the protected activity and the alleged retaliatory act (*see Albunio v City of New York*, 16 NY3d 472, 479 [2011]; *Brightman v Prison Health Serv., Inc.*, 108 AD3d 739, 740 [2d Dept 2013]).

Although the NYCHRL must be construed "liberally for the accomplishment of the uniquely broad and remedial purposes thereof" (Administrative Code § 8-130[a]; *Albunio*, 16 NY3d at 477–478), the statute nonetheless requires proof that the plaintiff engaged in conduct protected by the law and that the alleged adverse action was motivated, at least in part, by that conduct.

Here, plaintiff has failed to identify any evidence demonstrating that he engaged in protected activity within the meaning of the NYCHRL. Plaintiff alleges that he requested an accommodation and thereafter experienced retaliation. However, the record contains no evidence that plaintiff ever asserted that he suffered from a disability requiring accommodation within the meaning of the statute, nor that he made a request for a reasonable accommodation tied to any protected characteristic. A request for accommodation must be grounded in a qualifying disability or other protected status to trigger the protections of the NYCHRL (*see* Administrative Code § 8-102[16]; § 8-107[15]).

Moreover, plaintiff has failed to identify any adverse housing action that could reasonably be characterized as retaliatory. The record reflects that plaintiff's original lease term expired during the period in which the building was undergoing conversion, and that plaintiff was thereafter permitted to occupy Apartment 12C on a month-to-month basis. Plaintiff has produced no evidence suggesting that the nonrenewal of his prior lease or his relocation within the building was motivated by any protected activity rather than by the building's ongoing conversion and the expiration of the lease term.

Absent evidence that plaintiff engaged in protected activity or that defendants took action in response to such activity, the essential elements of a retaliation claim cannot be established. Even under the NYCHRL's liberal construction mandate, courts consistently dismiss retaliation claims where the plaintiff fails to demonstrate that the challenged conduct was connected to protected activity under the statute (*see Albunio*, 16 NY3d at 479).

Accordingly, because plaintiff has failed to raise a triable issue of fact as to either protected activity or retaliatory motive, defendants are entitled to judgment as a matter of law dismissing the NYCHRL retaliation claim.

### V.      Piercing the Corporate Veil

**160635/2015   LIBERSON, JOEL vs. FELDMAN, ZIEL**                                   **Page 9 of 13**
**Motion No.  007**

9 of 13

Plaintiff's attempt to impose individual liability upon defendant Ziel Feldman under a veil-piercing theory likewise fails as a matter of law. It is well settled that a corporation—or, as here, a limited liability company—exists as a legal entity separate and distinct from its owners, and that individuals who own or control such entities are generally not liable for the obligations of the entity (*see Matter of Morris v State of New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 140–141 [1993]). The doctrine of piercing the corporate veil is therefore applied sparingly and only in exceptional circumstances.

To disregard the corporate form, a plaintiff must establish two essential elements: (1) that the owner exercised complete domination over the corporation with respect to the transaction at issue, and (2) that such domination was used to commit a fraud or wrong against the plaintiff that resulted in the plaintiff's injury (*Matter of Morris*, 82 NY2d at 141). The Court of Appeals has emphasized that domination alone is not enough; rather, the plaintiff must demonstrate that the corporate form was abused to perpetrate a wrongful or unjust act (*id.* at 141–142).

Plaintiff has failed to make such a showing here. The record is devoid of any evidence suggesting that Feldman exercised complete domination over the corporate defendants for the purpose of committing a fraud or other wrongful act against plaintiff. Plaintiff has not identified any conduct by Feldman personally that could plausibly be construed as fraudulent, deceptive, or otherwise improper. Nor has plaintiff presented evidence that the corporate entities were used as mere shells for Feldman's personal dealings, that corporate and personal funds were commingled, or that the corporate form was otherwise abused.

Instead, plaintiff's allegations regarding Feldman's individual liability consist solely of conclusory assertions that Feldman was a principal of the corporate entities involved in the ownership and management of the building. Such allegations are insufficient to sustain a veil-piercing claim as a matter of law. As the Court of Appeals made clear in *Matter of Morris*, the mere fact that an individual is a shareholder or principal of a corporate entity—even one exercising significant influence over its operations—does not justify disregarding the corporate form absent proof that such control was used to commit a wrong against the plaintiff (*id.* at 141).

Plaintiff has likewise failed to identify any specific transaction, scheme, or course of conduct demonstrating that Feldman used the corporate structure to perpetrate a fraud or otherwise evade legal obligations. In the absence of evidence of such misconduct, the extraordinary remedy of piercing the corporate veil is not warranted.

Accordingly, because plaintiff has failed to raise a triable issue of fact as to either complete domination or the use of such domination to commit a fraud or wrong, defendants have established their entitlement to judgment as a matter of law dismissing the claims against Feldman in his individual capacity (*see Matter of Morris*, 82 NY2d at 141–142). The branch of defendants' motion seeking dismissal of the veil-piercing claim is therefore granted.

## CONCLUSION

In sum, the court concludes that defendants have failed to meet their prima facie burden with respect to plaintiff's negligence claim sounding in toxic exposure. Defendants' submissions

**160635/2015 LIBERSON, JOEL vs. FELDMAN, ZIEL** Page 10 of 13
**Motion No. 007**

[* 10]

do not conclusively establish the absence of a causal connection between the renovation activities occurring within the building and plaintiff's alleged respiratory injuries. In particular, defendants have not offered competent expert evidence addressing the environmental conditions in the building or demonstrating that renovation dust or airborne irritants could not have caused or contributed to plaintiff's claimed condition. Because material questions of fact remain regarding both general and specific causation, summary judgment dismissing the negligence claim is not warranted.

By contrast, the remaining causes of action asserted by plaintiff cannot survive summary judgment. With respect to the claim for breach of the warranty of habitability, the record contains no evidence that Apartment 12C contained any condition that rendered the premises unsafe or unfit for habitation within the meaning of Real Property Law § 235-b. Plaintiff has not demonstrated the existence of any hazardous condition in the apartment itself or that defendants had notice of such a condition.

Plaintiff's negligent misrepresentation claim likewise fails because plaintiff has not identified any special relationship giving rise to a duty to impart correct information, nor has he demonstrated that defendants made any material misrepresentation upon which he reasonably relied.

Similarly, plaintiff's claims for breach of contract and breach of the covenant of quiet enjoyment fail as a matter of law. The undisputed record establishes that plaintiff was neither actually nor constructively evicted from the premises and that he remained free to occupy Apartment 12C. Absent proof of a substantial and wrongful interference with possession, these claims cannot be sustained.

Plaintiff's claim for retaliation under the NYCHRL must also be dismissed. Plaintiff has failed to identify any protected activity within the meaning of the statute, such as the assertion of a disability or the request for a reasonable accommodation, and has not produced evidence demonstrating that any housing-related action taken by defendants was motivated by such protected activity.

Finally, plaintiff has failed to present evidence sufficient to justify piercing the corporate veil and imposing individual liability upon defendant Ziel Feldman. The record contains no proof that Feldman exercised complete domination over the corporate defendants for the purpose of committing a fraud or other wrong against plaintiff.

As such, while triable issues of fact preclude summary judgment on plaintiff's negligence claim, defendants have established their entitlement to judgment as a matter of law dismissing the remaining causes of action.

The court has carefully reviewed and considered the parties' submissions, including the motion papers, opposition papers, reply papers, exhibits, deposition testimony, expert materials, and all arguments advanced by counsel. To the extent any arguments, contentions, or requested relief have not been specifically addressed herein, the court has nonetheless considered them and finds them to be without merit or otherwise not dispositive of the issues presented.

[* 11]

Accordingly, it is hereby

ORDERED that the motion of defendants for summary judgment pursuant to CPLR § 3212 is granted in part and denied in part; and it is further

ORDERED that the branches of defendants' motion seeking dismissal of plaintiff's causes of action for breach of the warranty of habitability, negligent misrepresentation, breach of contract, breach of the covenant of quiet enjoyment, retaliation under the New York City Human Rights Law, and the claim seeking to impose individual liability upon defendant Ziel Feldman under a veil-piercing theory are granted, and those causes of action are dismissed; and it is further

ORDERED that the branch of defendants' motion seeking summary judgment dismissing plaintiff's negligence cause of action is denied; and it is further

ORDERED that the action shall proceed solely on plaintiff's remaining cause of action sounding in negligence; and it is further

ORDERED that in light of the court's issuance of this decision and order resolving the pending motion, the oral argument previously scheduled for March 10, 2026 at 11:30 a.m. is hereby vacated; and it is further

ORDERED that defendants shall serve a copy of this decision and order with notice of entry upon plaintiff, upon the Clerk of the Court (60 Centre Street), and upon the General Clerk's Office (60 Centre Street) in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases; and it is further

ORDERED that upon service of this decision and order with notice of entry, the Clerk of the Court is directed to enter judgment in favor of defendants dismissing plaintiff's causes of action for breach of the warranty of habitability, negligent misrepresentation, breach of contract, breach of the covenant of quiet enjoyment, retaliation under the New York City Human Rights Law, and the claim seeking to impose individual liability upon defendant Ziel Feldman, and it is further

ORDERED that all parties shall appear for the previously scheduled in-person settlement conference before Special Referee Miles Vigilante, Esq., which shall be held at 10:00 AM on March 12, 2026 in Room 106 of the courthouse located at 80 Centre Street, New York, New York; and it is further

ORDERED that all appearing counsel must be fully familiar with the facts of the case and must appear with full authority to negotiate and enter into a binding settlement agreement on behalf of their respective clients; and it is further

ORDERED that the parties shall appear at the settlement conference prepared to engage in meaningful settlement discussions and shall comply with any prior directives of this court regarding the exchange of settlement demands, offers, and other materials necessary to facilitate productive negotiations; and it is further

ORDERED that following the settlement conference, the parties shall jointly notify the court, by email to Part 65, as to the status of the matter; and it is further

ORDERED that such notification shall state (1) whether the action has been settled, or (2) if the action has not settled, whether the parties wish to engage in further settlement discussions before this court in Part 65, and if so, the parties' general availability and proposed timeline for scheduling such discussions; and it is further

ORDERED that said notification shall be transmitted by email to the court at SFC-PART65@nycourts.gov, and that all counsel of record and any self-represented parties shall be copied on the correspondence.

This constitutes the decision and order of the court.

20260309130102HKINGOCF65DX5929044108FF4E788711D5073

| **3/9/2026** | | **HASA A. KINGO, J.S.C.** |
|---|---|---|
| **DATE** | | |

CHECK ONE:

| | CASE DISPOSED | X | NON-FINAL DISPOSITION |
|---|---|---|---|
| | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |

APPLICATION:

| | SETTLE ORDER | | SUBMIT ORDER |
|---|---|---|---|

CHECK IF APPROPRIATE:

| | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |
|---|---|---|---|---|---|

160635/2015   LIBERSON, JOEL vs. FELDMAN, ZIEL
Motion No.  007

Page 13 of 13

13 of 13